STATE of South Dakota, Plaintiff
and Appellee,

v.

Michael STANDING SOLDIER,
Defendant and Appellant.

No. 13064.

Supreme Court of South Dakota.

Argued Oct. 22, 1980.

Decided Dec. 10, 1980.

Mikal Hanson, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Ramon A. Roubideaux, Rapid City, John H. Fitzgerald, Deadwood, for defendant and appellant.

FOSHEIM, Justice.

Appellant was found guilty of two counts of kidnapping and two counts of rape by a Pennington County jury. This appeal is from the judgment of conviction entered upon the verdicts. We affirm.

The charges stemmed from an incident involving two juvenile girls (the complaining witnesses) in Pennington County in early 1979. According to the evidence, late on February 11, 1979, the two girls stopped to eat at a Rapid City restaurant. Upon returning to their car, the girl approaching the driver's side of the vehicle was accosted by appellant, who demanded a ride. When she refused, appellant brandished a knife and ordered the girls into the car. He also entered the vehicle and instructed the driver to take Interstate 90 East toward Wall, South Dakota.

While traveling on Interstate 90, appellant raped the passenger as he held a knife to her throat. Appellant then directed the driver to turn off the Interstate onto a road known as the Jensen Road, about 45 miles east of Rapid City. At his instruction, they continued on this road until they reached a steep hill that was too slick to climb. Appellant then attempted to drive the car himself, but succeeded only in stranding it in the ditch. Appellant then brandished his knife and forcibly raped the same girl a second time. During the course of these events, appellant instructed the girls to tell their parents that a Negro or Chicano had kidnapped and raped them and that appellant had come to their aid and driven off the assailants.

In the early morning hours, a local rancher came upon the victims' car in the ditch. He found appellant and the complaining witnesses in the car. Neither girl revealed their experience to the rancher, and he took all three to his home. The rape victim then made a phone call in private to her parents and informed them of what had transpired. Her parents asked to talk with the rancher, who assured them that he would bring the girls to Rapid City. Before they reached the city, they were intercepted by law enforcement units. As the officers approached the truck, appellant dropped his knife on the floorboard. It was recovered by one of the girls and handed to the officers.

Appellant was taken into custody and charged. A preliminary hearing was held on February 22, 1979, and appellant was bound over on all four counts. On February 26, 1979, upon appellant's motion, the trial court ordered a psychiatric examination to determine whether he was competent to stand trial. On April 17, 1979, the court further ordered that he be examined by a private psychiatrist. The case was set for a May 15 trial. On May 10, a competency hearing was held, and appellant was determined to be incompetent to proceed to trial by reason of mental illness. Appellant was committed to the Human Services Center until competent to stand trial.

In July of 1979, the court received a report from the Center stating that appellant was competent to stand trial. On Sep-

tember 11, 1979, a jury was empaneled and sworn. After two days, the State had presented its case and two defense witnesses had testified. On the morning of the third day, appellant's attorney reminded the court that a formal order determining appellant competent to stand trial had not been issued. Since appellant had previously been found incompetent to go to trial, the trial judge felt it was necessary to enter an order with respect to appellant's present competency. After discussion with counsel, the court decided to receive additional testimony from a private psychiatrist who had recently examined appellant. The psychiatrist testified *in camera* that, in his opinion, appellant was still incompetent to stand trial. Defense counsel then moved for dismissal or, in the alternative, a mistrial because of the court's failure to enter an order of competency prior to trial. The court postponed its ruling and ordered a full competency hearing, after which it determined that, by a preponderance of the evidence, appellant was competent to proceed. Both counsel then suggested that the proper standard of proof in a competency hearing is "beyond a reasonable doubt." The court thereupon ruled that appellant was not competent to stand trial beyond a reasonable doubt. The trial judge then invited defense counsel to renew his motion for mistrial, which he did. The trial was thereupon suspended and appellant was again committed to the Human Services Center until mentally competent to stand trial.

On January 29, 1980, the court entered an order declaring appellant competent to proceed and again set a trial date. The case came on for jury trial as scheduled.

Appellant first contends that the discharge of the jury in his September, 1979 trial, followed by his second trial in early 1980, caused him to be twice put in jeopardy for the same offense in violation of the Fifth and Fourteenth Amendments to the United States Constitution and art. VI, § 9 of the South Dakota Constitution.

■ It is well-settled that jeopardy attaches when the trial commences. In a jury case, that occurs when the jury is empaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). Since at the September 1979 trial a jury had been sworn and two full days of testimony were heard, a rigid application of the rule would indicate a finding of initial jeopardy barring reprosecution. However, the rule that jeopardy barring retrial attaches at this point "is by no means a mere technicality, nor is it a 'rigid, mechanical' rule." *Serfass v. United States*, 420 U.S. 377, 391, 95 S.Ct. 1055, 1064, 43 L.Ed.2d 265, 276 (1975). The "conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." *Illinois v. Somerville*, 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425, 433 (1973).

The landmark decision construing the Double Jeopardy Clause in the context of a declaration of a mistrial is *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), wherein the United States Supreme Court stated:

We think in all cases of this nature the law has invested courts of justice with authority to discharge a jury from giving a verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere.

22 U.S. (9 Wheat.) at 580, 6 L.Ed. at 578.

■ We recognize that the discretion to discharge the jury before it has reached a verdict "is to be exercised 'only in very extraordinary and striking circumstances.'" *Downum v. United States*, supra, at 736, 83 S.Ct. at 1034, 10 L.Ed.2d at 103 (1963), quoting *United States v. Perez*, supra, at 580, 6 L.Ed. at 578. At the same time, we must be cognizant that "[t]here may be unforeseeable circumstances that arise during a trial making its completion im-

possible[.]" *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949). Thus, appellant's first trial, and the character of the defect or impropriety resulting in the discharge of the jury, must be examined.

As previously noted, the trial judge first found appellant competent to proceed under a preponderance of the evidence; he changed his ruling, however, when it was suggested by the prosecution and the defense that the proper standard of proof is "reasonable doubt." Appellant now urges that a "preponderance of the evidence" is the proper test and, since the court had found appellant competent under that standard, there was no manifest necessity for discharging the jury.

■ We need not decide here whether the trial court erred in employing the reasonable doubt standard,[1] for it is clear that the discharge of a jury granted at the defendant's request or with his consent generally will not bar reprosecution. *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). In the present case, defense counsel originally moved for mistrial because of the court's failure to enter a competency order prior to trial. The trial judge reserved ruling on the motion and proceeded to hold a competency hearing, following which he eventually found appellant incompetent to proceed under the reasonable doubt standard. The court then asked defense counsel:

"Do you want to renew your motion for a mistrial then?"

Defense counsel responded:

"Yes, Your Honor. May it please the Court. At this time, we move the Court for a mistrial on the grounds that the Court does not believe that the defendant is competent to stand trial beyond a reasonable doubt."

Appellant contends that this exchange does not establish consent to the mistrial. He argues that it was, in effect, a *sua sponte* ruling by the judge and that therefore a more stringent test is necessary to determine whether the second trial was permissible. *See United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).

It is true that appellant's original motion for mistrial was based upon a different reason. However, to say that the final motion for mistrial, following the reservation of ruling on the first motion, was "thrust" upon counsel by the court (as counsel argues), is inaccurate. The quoted dialogue demonstrates that defense counsel was quite willing to move for a mistrial on the grounds of appellant's incompetency.

■ The Double Jeopardy Clause does protect an accused against governmental actions intended to provoke mistrial requests and thereby subject defendants to "the substantial burdens imposed by multiple prosecutions. It bars retrials where 'bad-faith conduct by the judge or prosecutor,' *United States v. Jorn,* . . . threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." *United States v. Dinitz,* supra at 611, 96 S.Ct. at 1081, 47 L.Ed.2d at 276, quoting *Downum v. United States,* supra 372 U.S. at 736, 83 S.Ct. 1034, 10 L.Ed.2d at 102. Where governmental overreaching is alleged, however, there must exist a showing of actual prejudice, or intent to harass must be inferable from the fact of actual harm to the defendant. *Drayton v. Hayes,* 589 F.2d 117 (2d Cir. 1979); *United States v. Martin,* 561 F.2d 135 (8th Cir. 1977); *United States v. Kessler,* 530 F.2d 1246 (5th Cir. 1976). No such showing has been made here by appellant, and we discern nothing from the actions of the trial court or the prosecutor that can be even remotely characterized as

---

1. The 1978 amendment of former SDCL 23-38–4 (now SDCL 23A–10A–6) apparently has caused confusion concerning the burden of proof in competency hearings. However, since our decision does not reach this question, we do not address the State's contention that SDCL 23A·10A 6 requires implementation of the reasonable doubt burden at such hearings.

"overreaching." Where "circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." *United States v. Jorn*, supra at 485, 91 S.Ct. at 557, 27 L.Ed.2d at 556. Accordingly, we conclude that the reprosecution of appellant did not offend the prohibition against double jeopardy.

■ Appellant next contends that the trial court erred in not granting a directed verdict because he was insane at the time of the offense as a matter of law. Whenever evidence of the degree of insanity constituting a defense is presented, the presumption of sanity disappears and the accused's mental capacity to commit the act for which he is charged becomes an essential element to be proved by competent evidence beyond a reasonable doubt. *State v. Kost*, 290 N.W.2d 482 (S.D.1980); *State v. Violett*, 79 S.D. 292, 111 N.W.2d 598 (1961). In this state, an accused's sanity is measured by his capacity and reason to enable him to distinguish between right and wrong with regard to the act charged. SDCL 22-3-1(3) and SDCL 22–1–2(22).[2] *State v. Ristau*, 290 N.W.2d 487 (S.D.1980); *State v. Violett*, supra. In determining whether denial of appellant's motion was reversible error, we must consider all the evidence, including the acts, conduct and declarations of the accused, both prior and subsequent to the acts charged, as well as at the time of their commission. *State v. Kost*, supra; *State v. Black Feather*, 249 N.W.2d 261 (S.D.1976); *State v. Kindvall*, 86 S.D. 91, 191 N.W.2d 289 (1971).

It was established that appellant became extremely withdrawn and bizarre following a drug overdose while in the military service. Appellant used liquor and various drugs freely and claimed to be under the influence of alcohol, drugs and lighter fluid on the night in question. He claims to have been in a dream state with very little memory of his encounter with the complaining witnesses.

The prosecutrixes also testified concerning appellant's strange behavior. He evidently told them that he was on his way to rendezvous with 4,000 "Hell's Angels" in western South Dakota. He also referred to non-existent blood on his shirt from a killing he claimed to have committed and asked the girls to conceal an imaginary gun in the car.

Dr. Lord, the private psychiatrist who examined appellant, testified that, in his opinion, appellant "had been using drugs at the time of the incident and that he was indeed suffering from the toxic effects of them." He concluded that appellant could not distinguish between right and wrong. Dr. Lewis, a private psychologist, testified that appellant's intellect had deteriorated to the point where he was "mentally defective" and "severely disturbed," with "a high probability of organic impairment due to chemical abuse." He testified that *if* appellant was under the influence of drugs at the time of the offense, then there was an "extremely high" probability that appellant could not distinguish between right and wrong.

The State relied primarily on the testimony of Dr. Bean, a psychiatrist from the Human Services Center. In his opinion, appellant was able to distinguish between right and wrong at the time of the offense. Dr. Bean's opinion is buttressed by other evidence indicating appellant was fully

---

**2.** SDCL 22–3–1(3) reads:

All persons are capable of committing crimes except those belonging to the following classes:

.    .    .    .    .

(3) Persons who, at the time of committing the act charged against them, were mentally ill[.]

SDCL 22–1–2(22) reads:

Terms used in this title, and in other statutes which prescribe a penalty for a public offense, unless the context otherwise plainly requires, mean:

.    .    .    .    .

(22) "Mentally ill," the condition of a person temporarily or partially deprived of reason, upon proof that at the time of committing the act charged against him, he was incapable of knowing its wrongfulness[;]

aware that his conduct was wrongful. Appellant stated, according to the complaining witnesses, that "he was going to rape us both and kill us both." During the course of the first rape, he repeatedly warned the driver to stay within the speed limit and not draw attention to the car. While the car was stranded, he directed the driver to start the engine and run the heater, but to keep a window partly open to avoid asphyxiation. Further, he fabricated the Negro–Chicano kidnap story and instructed the girls to memorize it. Finally, as law officers intercepted the rancher's vehicle, appellant made a deliberate attempt to conceal the knife.

■ Appellant contends that the evidence was insufficient to establish his sanity beyond a reasonable doubt. In reviewing this contention, the question presented is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. *State v. Shank*, 88 S.D. 645, 226 N.W.2d 384 (1975). On appeal, we view the evidence in the light most favorable to the verdict. *State v. Best*, 89 S.D. 227, 232 N.W.2d 447 (1975). While there were considerable conflicts in the evidence regarding appellant's mental capacity, we must defer to the jury's finding. The factfinder's decision on the issue of insanity will not be disturbed unless there is insufficient evidence to support it. *State v. Kost*, supra; *State v. Newson*, 183 Neb. 750, 164 N.W.2d 211 (1969). We conclude that there was sufficient evidence from which the jury could find beyond a reasonable doubt that appellant was sane at the time of the offense.

■ Finally, appellant contends that the prosecutor improperly argued to the jury against Instruction No. 10, which reads:

It is a defense to a charge of rape that the Defendant entertained a reasonable and good faith belief that the female person voluntarily consented to engage in sexual intercourse. If from all the evidence you have a reasonable doubt whether the Defendant reasonably and in good faith believed she voluntarily consented to engage in sexual intercourse, you must give the Defendant the benefit of the doubt and acquit him of such charge.

Defense counsel commented on this instruction in closing argument. In rebuttal, the prosecutor said:

I was most interested in the defense argument concerning consent. Defense counsel said, "Don't worry so much about what the girls testified to. Worry about, rather, whether in good faith this defendant felt she was consenting." I guess to say I don't agree with that is one thing. Wouldn't that be convenient, to have the knife at someone's throat and to say, "Well, fortunately she's consenting."

Defense counsel promptly objected, to which the court responded: "Well, I guess you're both talking about the instruction. The jury will have an opportunity to read it."

It appears that the prosecutor was responding to defense counsel's argument concerning Instruction No. 10, rather than disputing the law announced by the instruction. Counsel "are allowed considerable latitude in argument and have the right to comment upon matters supported by evidence. What is proper in a given case should be left largely to the discretion of the trial court and a judgment should be reversed for misconduct of counsel only when there has been a clear and manifest abuse of discretion." *State v. Burtts*, 81 S.D. 150, 157, 132 N.W.2d 209, 212 (1964). We are not persuaded that the rebuttal argument exceeded the bounds of fair response.

We have reviewed appellant's remaining arguments and find them to be without merit. The judgment of conviction is affirmed.

All the Justices concur.