STATE of South Dakota, Plaintiff and Appellee,

v.

John Louis Iron SHELL, Defendant and Appellant.

No. 13099.

Supreme Court of South Dakota.

Argued Nov. 20, 1980.

Decided Feb. 4, 1981.

Mark Smith, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Brent A. Wilbur, May, Adam, Gerdes & Thompson, Pierre, for defendant and appellant.

FOSHEIM, Justice.

Appellant was convicted by a Tripp County jury of simple assault and resisting arrest. This appeal is from the judgment on the verdicts. We affirm.

Early on June 20, 1979, Officer Curtis Blasy of the Winner, South Dakota, Police Department responded to a disturbance report at a local truck stop. Upon his arrival, he found no disturbance, but noticed a parked automobile in which appellant was seated on the passenger side. The officer approached the vehicle and observed several open beer and liquor containers. Appellant exited from the vehicle and began to walk away, at which point Officer Blasy informed him that he was under arrest for "open container." Appellant began to run, and a chase ensued. Approximately 50 yards from the car, the officer caught appellant, whereupon the two men struggled; appellant fell to the ground and Officer Blasy sprayed him with Mace. The officer was nonetheless unable to subdue appellant, who got to his feet and continued to run until Officer Blasy again caught him. They struggled further, and Officer Blasy administered additional Mace. At this point, Blasy noticed three men approaching and demanded that they assist him. They refused, and disappeared from view. While the officer continued to subdue appellant, he was attacked from behind and severely beaten. He testified that at least four men were involved in the beating; two pinned his arms to the ground while a third gouged his eyes and a fourth repeatedly struck his kneecaps with a length of pipe.

The evidence established that in the hours preceding the assault, appellant had been drinking with Alexander Siers, Clayton Waugh, and Darryl Iron Shell (appellant's brother).[1] These individuals had driven to the truck stop together in Darryl Iron Shell's automobile, but were not present when Officer Blasy first arrived. Appellant testified that when he escaped from the officer, he staggered toward the truck stop and was "grabbed" by "one of my brothers or something, I think it was one of my brothers, and the car came up and I got in and we took off."

Appellant first contends that his due process rights were violated by the admission of testimony concerning an identification of appellant's brother that stemmed from an admittedly tainted out-of-court identification procedure.

At the time of the incident, Paul Storms, a Winner resident, was driving in the vicinity of the truck stop and observed three

---

1. The four men were co-defendants. Siers and Darryl Iron Shell pleaded guilty; Waugh was acquitted.

Indian males emerge from behind a wooden fence located at the rear of the truck stop and depart in the Iron Shell vehicle. The following day, Wayne Everson, an agent for the South Dakota Division of Criminal Investigation, showed him seventeen photographs of Indian males. When Storms was unable to identify any of the individuals, Everson directed his attention to three specific photographs (of appellant, his brother Darryl, and Alexander Siers) and asked if he could identify any of them. At that point, Storms identified the three as the individuals he observed enter the Iron Shell vehicle and drive out of town.

Appellant was first brought to trial in March, 1980. A defense motion to suppress Storms' identification of the defendant was heard in chambers. The trial court ruled that the identification procedure was unconstitutional. Upon the prosecutor's representation that the invalid identifications would be used only to identify Darryl Iron Shell (appellant's brother), the court allowed Everson to so testify. When testimony before the jury resumed, however, the following colloquy occurred between the prosecutor and Everson:

Q: Now, after Mr. Storms was unable to identify anyone out of the seventeen photographs, did you then—well, what did you do after that please?

A: Mr. Storms was unable to pick out any pictures, so I pointed to three gentlemen that we knew were in the area at the time. That would be John Iron Shell, Darryl Iron Shell and Alex Siers.

.  .  .  .  .

Q: Now, Agent Everson, from the three photographs that you directed Mr. Storm's attention to, did he identify one of these individuals as having been the person who was the driver that night?

A: May I use my notes, sir?

Q: Yes, to refresh your memory.

A: He indicated that all three got into the vehicle and left.

Defense counsel promptly moved for a mistrial because Everson's testimony had improperly included appellant as one of the persons identified as a result of the admittedly tainted identification procedure. The motion was granted. A new trial commenced several weeks later. Again, the defense moved to suppress any identifications made by Storms, and the court again ruled that Everson could testify as long as he did not state that appellant was among those identified by Storms. Everson's testimony at the second trial complied with that limitation.

■ Appellant contends that Agent Everson's testimony at the second trial concerning Storms' identification of appellant's brother operated to deny his due process rights. However, unless there is a reasonable possibility that such testimony contributed to appellant's conviction, reversal is not required. *State v. Johnson*, 87 S.D. 43, 202 N.W.2d 132 (1972). We see little connection between the challenged testimony and appellant's conviction. Appellant suggests that the testimony severely weakened his defense because it conflicted with his claim that he was picked up in the alley and not in the parking lot of the gas station. This overlooks the fact that Everson did not state at the second trial that appellant was one of the individuals entering the car in the parking lot, but merely stated that Storms identified appellant's brother as the driver. It is true that the court instructed the jury on aiding and abetting, but the fact remains that appellant admitted his presence with Siers, Waugh and Darryl Iron Shell at the scene. Similarly, he admitted fleeing the area with the other men. In view of such evidence, we conclude that Everson's testimony was, at most, cumulative in its effect and, as such, harmless. *State v. Johnson*, supra; *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

■ Appellant next contends that his second trial, following the mistrial, caused him to be twice put in jeopardy for the same offense in violation of the Fifth and Fourteenth Amendments to the United

States Constitution and art. VI, § 9 of the South Dakota Constitution. The discharge of a jury granted at a defendant's request or with his consent, however, generally will not bar reprosecution. *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *State v. Standing Soldier*, 299 N.W.2d 568 (S.D.1980). We fully recognize that the Double Jeopardy Clause does protect an accused against governmental actions designed to provoke mistrial requests. *State v. Standing Soldier*, supra. It bars retrials where bad-faith conduct by the prosecutor or the judge causes "[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict" the defendant. *Downum v. United States*, 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100, 103 (1963).

The events that precipitated appellant's mistrial motion do not constitute the judicial or prosecutorial overreaching that properly invokes the Double Jeopardy bar to reprosecution. Appellant's mistrial motion was prompted by Everson's testimony identifying appellant as one of the individuals identified by the eyewitness Storms. It is clear from the quoted dialogue that the prosecutor specifically asked Everson only about the driver of the vehicle. There was no suggestion in the State's case that appellant was, in fact, the driver. The witness, it appears, spontaneously exceeded the response solicited. Where governmental overreaching is alleged, there must exist a showing of actual prejudice, or an intent to harass must be inferable from the fact of actual harm to the defendant. *State v. Standing Soldier*, supra. No such showing has been made. Accordingly, we conclude that the reprosecution of appellant did not violate the prohibition against double jeopardy. *United States v. Scott*, supra; *United States v. Jorn*, supra; *State v. Standing Soldier*, supra.

Finally, appellant contends that the trial court erred in allowing expert testimony from a prosecution witness. Appellant's primary defense to the charges was that he was so incapacitated by the Mace that he could not have assaulted the officer. The State called Donald Gromer, an agent for the Division of Criminal Investigation. Gromer admitted that he had no technical knowledge of the effects of Mace, but stated that he had used Mace or seen it used from four to ten times. Additionally, he had been Maced himself. Gromer testified, from experience, that Mace victims can be aggressive, even while intoxicated. This opinion was buttressed by the testimony of Officer Blasy and appellant that resistance continued after the Mace had been applied.

The admission of expert testimony is governed by SDCL 19–15–2, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, *experience*, training, or education, may testify thereto in the form of an opinion or otherwise. [Emphasis supplied.]

This statute is patterned after Rule 702 of the Federal Rules of Evidence. A review of federal decisions construing this provision indicates that the trial judge has broad discretion concerning qualification of experts and admission of expert testimony, and the trial judge will not be reversed absent a clear showing of abuse of that discretion. *Ullman v. Overnite Transportation Co.*, 563 F.2d 152 (5th Cir. 1977); *Farner v. Paccar, Inc.*, 562 F.2d 518 (8th Cir. 1977); *United States v. Bermudez*, 526 F.2d 89 (2nd Cir. 1975), cert. denied, 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976). We cannot conclude that the trial court abused its discretion in allowing Gromer's testimony. The worth and weight of such testimony was ultimately for the jury, and the court properly instructed the jurors that the agent's testimony was not binding upon them. *See United States v. Bermudez*, supra, at 98.

The judgment of conviction is affirmed.

All the Justices concur.