STATE of South Dakota, Plaintiff
and Appellant,

v.

Carroll L. DELFS, Defendant
and Appellee.

No. 15262.

Supreme Court of South Dakota.

Considered on Briefs Sept. 16, 1986.

Decided Nov. 19, 1986.

Rehearing Denied Dec. 11, 1986.

Craig M. Eichstadt, Asst. Atty. Gen.,
Pierre, On the brief: Mark V. Meierhenry,
Atty. Gen., Pierre, for plaintiff and appellant.

James E. McCulloch, Minick, Nelson &
McCulloch, Vermillion, for defendant and
appellee.

SABERS, Justice.

The magistrate court granted the State's
motion for mistrial without prejudice, due
to alleged juror misconduct during voir

dire. On appeal to the circuit court, the order was modified and the mistrial was granted with prejudice. We reverse and reinstate the magistrate court order.

## Facts

Carroll L. Delfs (Delfs), was arrested for driving while intoxicated (DWI) on October 12, 1984. Following a preliminary hearing, he was bound over for trial on November 27, 1984. Trial commenced on March 12, 1985, but proceeded only so far as impanelling the jury and opening statements. No evidence was received.

After the noon recess and in-chambers, the State of South Dakota (State), moved for a mistrial based on the alleged misconduct of jurors Gary Eli (Eli) and Howard Johnson (Johnson). State claimed that both jurors failed to properly respond to the prosecutor's questions during voir dire and that Eli failed to properly respond to the pretrial jury questionnaire. Defense counsel resisted this motion.

Evidence showed that Eli failed to disclose on his pretrial questionnaire that he had ever been arrested or convicted of DWI or that any such charge was currently pending against him. He also failed to respond or correctly answer similar questions asked during voir dire. Eli had in fact been convicted of DWI three times and had another charge pending against him in Yankton County. His son had also been arrested for DWI. Neither the State nor defense counsel were aware of Eli and his son's DWI records until after the jury was impaneled. All of Eli's DWI charges occurred outside the prosecutor's jurisdiction.

Johnson admitted a DWI conviction in his questionnaire. However, there is conflicting evidence as to whether he failed to answer questions concerning DWI convictions during jury examination. During the hearing on the motion, Johnson claimed that he raised his hand in response to the prosecutor's question concerning whether any jury members, their friends or relatives, had been arrested for the charge of driving under the influence. By contrast, the magistrate found: "Both counsel and

the Clerk agree that Mr. Howard Johnson did not respond to [the prosecutor's] questions despite the fact that he has been convicted of DWI[.]" Both Eli and Johnson were selected to serve as jurors.

Following the hearing, the magistrate court granted the State a mistrial without prejudice despite defense counsel's objection. In her written decision, the magistrate concluded that:

—The conduct of jurors Gary Eli and Howard Johnson constituted a substantial irregularity and misconduct which substantially prejudiced the possibility of a fair trial;

—The motion was correctly and timely brought by the State and was properly before the court for its consideration; and

—The irregularity and misconduct of said jurors was clearly sufficient to warrant the granting of a mistrial without prejudice.

Thereafter, Delfs appealed to the circuit court. In its Memorandum Opinion, the circuit court stated:

The record below does not reveal any findings or any conclusions, based thereon, as to bias, doubt does exist as to whether the two members of the jury were biased against the State of South Dakota, and such doubt must be resolved in favor of the defendant's constitutional rights. Accordingly, the dismissal herein is with prejudice.

## Claims of the Parties

On appeal, the State contends that the magistrate court did not abuse its discretion in granting the mistrial without prejudice, which permitted a retrial. State asserts that it met the "manifest necessity" test for discharge of the jury, and that Delfs right to have his trial resolved by the first jury impaneled must yield to the public's interest in obtaining a fair trial. Delfs claims that there was no actual showing of prejudice to justify the granting of the mistrial. He claims that a mistrial without prejudice puts him twice in jeopardy for the

same offense, which is prohibited by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

### 1. DID THE MAGISTRATE COURT ABUSE ITS DISCRETION IN GRANTING THE MISTRIAL WITHOUT PREJUDICE?

A state may not put a defendant in jeopardy twice for the same offense. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). If the innocence of the accused has been confirmed by a final judgment of acquittal, the Constitution conclusively presumes that a second trial would be unfair. *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). However, in a situation where the action has not concluded in a final judgment, a retrial is not automatically precluded:

> Unlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused. Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury. Yet in view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar.

*Arizona,* 434 U.S. at 505, 98 S.Ct. at 830, 54 L.Ed.2d at 728.

Jeopardy attaches when the trial commences, and in a jury trial, that occurs when the jury is impaneled and sworn. *State v. Standing Soldier,* 299 N.W.2d 568, 570 (S.D.1980) *citing Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). Here, the jury had been impaneled and counsels' opening statements completed, but no evidence had been received. However, "the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." *Illinois v. Somerville,* 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425, 433 (1973); *Standing Soldier,* 299 N.W.2d at 570. Nevertheless, it must be borne in mind that the prosecutor's burden is a heavy one. "The prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant." *Arizona,* 434 U.S. at 505, 98 S.Ct. at 830, 54 L.Ed.2d at 728.

Mr. Justice Story's classic formulation of the "manifest necessity" test appears in the seminal case of *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), in which the Double Jeopardy Clause was construed in the context of a mistrial. He stated:

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere.

22 U.S. (9 Wheat.) at 580, 6 L.Ed. at 165.

This formulation does not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge. *Arizona,* 434 U.S. at 506, 98 S.Ct. at 830–831, 54 L.Ed.2d at 728. As stated in *Illinois,* the *Perez*

> formulation ... abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a

criminal trial. The broad discretion reserved to the trial judge in such circumstances has been consistently reiterated in decisions of this Court.

410 U.S. at 462, 93 S.Ct. at 1069, 35 L.Ed.2d at 429.

■ Therefore, the key word "necessity" cannot be interpreted literally; instead, it is assumed that there are degrees of necessity and a "high degree" is required before a mistrial will be appropriate. *Arizona*, 434 U.S. at 506, 98 S.Ct. at 831, 54 L.Ed.2d at 729. Furthermore, the trial judge's failure to find "manifest necessity" in those words, or to articulate on the record *all the factors* which prompted him to order the mistrial, does not render it constitutionally defective so long as the basis for the ruling is adequately disclosed by the record. (emphasis added). *Id.* 434 U.S. at 517, 98 S.Ct. at 836, 54 L.Ed.2d at 735. The federal case law in this area underscores the broad discretion which rests with the trial judge, and that each case turns on its own peculiar facts.*

Delfs advances two arguments to support the conclusion that the Double Jeopardy Clause precludes a retrial. First, he asserts that the magistrate court failed to establish that prejudice existed. Secondly, he argues that the circumstances surrounding this situation do not present a case in which his "right to have the trial completed by a particular tribunal" should be subordinated. Both of these contentions fail.

■ An actual showing of prejudice must exist to justify the granting of a mistrial. *State v. Clabaugh*, 346 N.W.2d 448, 451 (S.D.1984); *State v. High Elk*, 298 N.W.2d 87, 89 (S.D.1980); *State v. Murphy*, 89 S.D. 486, 492–493, 234 N.W.2d 54, 58 (1975). Here, the magistrate was satisfied after Eli and Johnson were examined in-chambers, that their misconduct prejudiced the possibility of a fair trial. Eli could not initially remember being asked the specific question, "Have you ever been arrested for DWI?" However, further on

in the proceeding he admitted that he "probably was" asked. Johnson stated that he recalled being asked. We are convinced from this record that the question, in some form, was propounded. This is supported by the fact that one of the jurors was discharged for cause after he mentioned a DWI arrest which had been reduced to reckless driving.

The magistrate court, sitting as the trial court in this instance, found that the State relied on the truthfulness of the contents of the jury questionnaires as well as on the jurors responses during voir dire. It is apparent from this record that the State placed great emphasis upon being informed of *any* potential jurors' involvement with a DWI. This is also demonstrated by the fact that the State excused one prospective juror for cause upon learning such information.

When asked why he was not more forthcoming with his own DWI convictions during the in-chambers hearing, Eli stated:

> Well, being we'd never had a jury trial or anything, I didn't think that would be a reason to try to get out of serving, you know.... I figured it wouldn't really have a bearing on this as far as whether I served or not.

Although Johnson stated that he raised his hand in response to the prosecutor's questions concerning DWI convictions, Delfs attorney noted that Johnson, "did not respond ever to anybody's questions." This assertion was in agreement with the Clerk of Court's recollection. Based on these findings, the magistrate concluded that these factors substantially prejudiced the likelihood of a fair trial.

■ The circuit court held that there was doubt as to whether Eli and Johnson were biased against the State. However, the circuit court was functioning here as an intermediate appellate court. It did not examine the two jurors nor hear the evi-

---

* See: *Arizona*, and *Illinois, supra; Gori v. United States*, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949); *Simmons v. United States*, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891); *Perez, supra.*

dence. Therefore, the circuit court decision is not entitled to any deference.

■ We are satisfied from this record that the magistrate court adequately demonstrated the "manifest necessity" required to grant a mistrial without prejudice. As we wrote in *Standing Soldier:*

> We recognize that the discretion to discharge the jury before it has reached a verdict 'is to be exercised only in very extraordinary and striking circumstances.' (citations omitted). At the same time we must be cognizant that '[t]here may be unforeseeable circumstances that arise during a trial making its completion impossible[.]' (citation omitted).

299 N.W.2d at 570–571.

Delfs' contention that his right to have the trial completed by the first jury impaneled, since jeopardy attached at that point, is precisely the type of rigid and mechanical rule that has been avoided since *Perez,* and which ignores the particular circumstances of this case. Neither the State nor defense counsel were aware of Eli or his son's DWI convictions until after the jury was impaneled. The records of those charges were outside the prosecutor's jurisdiction. There is no evidence to suggest that the State moved for a mistrial in order to obtain an unfair advantage upon retrial. Accordingly, Delfs right must be subordinated to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury. *Arizona,* 434 U.S. at 505, 98 S.Ct. at 830, 54 L.Ed.2d at 728.

We hold that the mistrial met the "manifest necessity" requirement of federal case law. The record shows that the magistrate court reasonably concluded that the "public's interest in fair trials designed to end in just judgments" would have been defeated had trial continued. Therefore, the Double Jeopardy Clause did not bar retrial under the circumstances of this case, and Delfs' "valued right to have his trial completed by a particular tribunal" must be subordinated to achieve the ends of public justice. Finding no abuse of discretion on the part of the magistrate court, we reverse the circuit court and reinstate the magistrate court order granting a mistrial without prejudice.

All the Justices concur.