Frank ZEPP, Plaintiff and Appellee,

v.

Robert HOFMANN, Defendant and Appellant.

No. 16351.

Supreme Court of South Dakota.

Considered on Briefs April 27, 1989.

Decided July 12, 1989.

Rehearing Denied Aug. 11, 1989.

David R. Gienapp of Arneson, Issenhuth and Gienapp, Madison, for defendant and appellant.

Rodney Freeman, Jr. of Churchill, Manolis, Freeman & Kludt, Huron, for plaintiff and appellee.

SABERS, Justice.

Frank Zepp sustained substantial injuries and damages while he was riding his motorcycle in an alley behind Robert Hofmann's home. He claimed he was struck in the face with a board and the jury agreed. Hofmann claims error in regard to certain expert and deposition testimony.

### Facts

Zepp commenced an action against Hofmann and his son, Kevin Hofmann (Kevin), alleging that they intentionally swung a board at Zepp resulting in serious injuries. The testimony at trial was generally disputed.

Hofmann testified that he had taken some garbage out to the garbage cans near the alley. He stated that he heard a motorcycle coming down the alley as he started back toward the house. He then heard a thud and went back to the alley where he saw Zepp lying near the motorcycle in the alley. He testified that he did not strike Zepp with a board or with any other object.

Portions of his testimony were corroborated by his wife and Kevin.

Several of Zepp's friends, who may have been drinking, testified that they witnessed the incident from Zepp's home one block away. They testified that Hofmann struck Zepp in the face with what appeared to be a board, though no board was found. Zepp testified that he remembered nothing after turning into the alley behind Hofmann's house. A blood test revealed that Zepp had a blood alcohol content of .20 at the time. Another witness, Dick Biel, who apparently had nothing to drink, testified that he was riding his bicycle near the alley and saw Hofmann swing a board which struck Zepp in the face. He testified that Zepp's body was propelled forward off the motorcycle after the motorcycle landed and slid along the alley until his body came to rest forward of the motorcycle. There was medical testimony that wood splinters were removed from Zepp's face.

Both parties introduced expert testimony at trial. Hofmann called Lewis Dirks (Dirks), an accident reconstructionist, as an expert witness. Hofmann attempted to elicit several opinions from Dirks concerning the incident. Zepp's objections to certain of these opinions were sustained. To prove his injuries, Zepp introduced deposition testimony of two doctors. Before the depositions were read to the jury, Hofmann objected to certain portions of the deposition of Dr. George Nicholas (Dr. Nicholas). The court overruled these objections and the entire deposition was read to the jury.

At the close of Zepp's case, a directed verdict was granted in favor of the son, Kevin. The jury returned a verdict against Hofmann and awarded Zepp $99,522. Hofmann appeals. We affirm.

### 1. Denial of certain expert testimony.

Dirks was qualified as an expert witness in accident reconstruction. In preparation for trial, he inspected the alley behind Hofmann's home and studied the materials in the police file. This file included measurements of the alley, the skid marks, and location of Zepp's body and motorcycle immediately following the incident. Based on this information, Dirks was asked to give several expert opinions.[1] Objections were consistently sustained, resulting in three offers of proof and claims of error. They are:

a. First, Dirks was asked to give his opinion as to where Zepp's body would have been located in relation to the motorcycle if Zepp had been struck by a two-by-four board. Zepp's objection for lack of foundation was sustained. Hofmann attempted to lay additional foundation, but Dirks was not permitted to give his opinion. Hofmann made an offer of proof.

In the offer of proof, Dirks testified that Zepp's body would have been much closer to the point of impact than the motorcycle, if he had been struck by a board. This opinion was based on a motorcycle speed of twenty-five miles per hour at the point of impact and that Zepp was struck by a two-by-four. Dirks stated that this was sufficient data to give such an opinion. Zepp argued that there was no clear evidence as to the speed of the motorcycle at the point of impact. He further argued lack of foundation because no board was found and that it was not clear whether or not the board was swung. Dirks admitted that he could not calculate foot pounds of energy to determine the exact degree of retardation on Zepp's body without knowing the weight and the velocity of the board. The court ruled there was insufficient foundation for Dirks' opinion.

b. Second, Dirks was asked the following question:

Mr. Dirks, based on your knowledge, investigation in this matter, the documents that you have examined, have you formed an opinion as to whether or not this accident is consistent with an accident caused by a motorcycle driven by an individual down an alley at 25 miles an

---

**1.** The only opinion Dirks was permitted to give was that the motorcycle was out of control at the start of the skid marks thirty-two feet before the garbage cans. He testified that this was due either to sudden acceleration or deceleration. See third offer of proof and claim of error, *infra* at c.

hour being hit by either a two-by-four or one-by-six four to six foot long? Zepp objected for lack of foundation. The court sustained the objection on the basis that it was an ultimate issue of fact for the jury. Hofmann made an offer of proof in which Dirks gave his opinion that the evidence was inconsistent with Zepp being struck by a two-by-four or a one-by-six while on the motorcycle. Dirks again stated that he believed he had sufficient data to make such an opinion.

c. Third, Dirks was asked where the accident began in relation to the garbage cans on Hofmann's property. Zepp's objection was sustained. Hofmann made an offer of proof in which Dirks gave his opinion that the accident began thirty-two feet prior to the garbage cans on Hofmann's property. This was based on skid marks showing that Zepp's motorcycle was out of control thirty-two feet before the garbage cans. The court denied this opinion stating that it was for the jury to determine whether the accident actually began at the start of the skid marks.

Hofmann claims the court erred in denying these opinions. He claims that the objections went to the weight of the testimony and not to admissibility. Zepp argues that the court ruled correctly and there was no abuse of discretion.

■■ The trial court's evidentiary rulings are presumed correct and will not be reversed unless there is a clear abuse of discretion. *Magbuhat v. Kovarik*, 382 N.W.2d 43 (S.D.1986); *Durham v. Ciba–Geigy Corp.*, 315 N.W.2d 696 (S.D.1982); *Krumm v. Feuerhelm*, 298 N.W.2d 184 (S.D.1980). The trial court has broad discretion concerning qualification of experts and admission of expert testimony. *State v. Iron Shell*, 301 N.W.2d 669 (S.D.1981). South Dakota has several statutes dealing with admissibility of expert opinions.[2] Though these statutes remove some of the rigid standards for admission of expert testimony, we have held that there must be some factual data to support an expert's opinion. *Buckley v. Fredericks*, 291 N.W.2d 770 (S.D.1980).

■■ In this case, Dirks had some of the data necessary to give the requested opinions but admitted that he could not give a specific opinion without additional information, such as the size and velocity of the board. He could only testify generally as to the location of Zepp's body in relation to the motorcycle and whether the accident was consistent with the eye witness testimony. This court has expressed a preference for eyewitness testimony, but this does not preclude the additional use of expert testimony. *Buckley, supra.* SDCL 19–15–2 provides that an expert witness may testify in the form of an opinion or otherwise if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Without additional information, it is questionable whether Dirks could testify to technical, scientific, or specialized knowledge beyond that of the average lay person. There may even be a valid question as to whether his evidence would assist the trier of fact to understand the evidence or determine a fact in issue. While SDCL 19–15–4 permits expert opinions lacking in foundation,[3] the

2. Two of these statutes are:
SDCL 19–15–2 provides:
    If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
SDCL 19–15–4 provides:
    An expert witness may be asked to state his opinions or inferences, whether these opinions or inferences are based on the witness' personal observation, or on evidence introduced at the trial and seen or heard by the witness, or on his technical knowledge of the subject, without first specifying hypothetically in the question the data on which these opinions or inferences are based. An expert witness may be required, on direct or cross-examination, to specify the data on which his opinions or inferences are based.

3. The basis for this rule is that it speeds up the trial and permits the opposing party to attack a weak foundation on cross-examination. The deficiencies in the factual basis of an expert's opinion may be brought out on cross-examination. *Buckley, supra.* As stated in 3 D. Louisell and C. Mueller *Federal Evidence* § 399 (1979):

trial court could have concluded that Dirks' opinions went to ultimate issues and improperly invaded the province of the jury under *Vogt v. Billion*, 405 N.W.2d 635 (S.D.1987). Although it may be better practice to resolve doubt on the side of admissibility, these opinions were speculative. In view of all the circumstances and evidence in this case, especially the testimony of the eye witnesses and the testimony concerning the removal of wood splinters from Zepp's face, we cannot say that the trial court abused its discretion in refusing to allow Dirks to give these opinions.

### 2. *Deposition testimony.*

a. In his deposition, Dr. Nicholas was asked the following question by Zepp's counsel:

> Okay. Now, Doctor, based upon a reasonable degree of medical certainty, do you have an opinion as to whether or not the injuries that you observed during the course of your treatment are consistent with the description of what happened that day in May; i.e. being hit in the face with a broad wooden object? [4]

Hofmann objected at trial stating that Dr. Nicholas was not competent to give such an opinion. However, Hofmann had not objected to the question at the deposition. The trial court refused to rule on the objection stating that it was waived by failure to object at the deposition. Hofmann claims this was error under SDCL 15–6–32(d)(3)(A) and (B) as the objection went to the competence of the witness and not the form of the question.

SDCL 15–6–32(d)(3)(A) provides:

> Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time.

SDCL 15–6–32(d)(3)(B) provides:

> Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of parties, and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition.

■ Under SDCL 15–6–32(d)(3)(A) objections to the competency of a witness, which are not made at the deposition, are waived to the extent that they could have been

---

It is the unnecessary consumption of time, and (especially where hypothetical questions are used) the problems of confusion, quibbling objections, and disruption of the calling party's case, which make the price of requiring a foundation to be laid first so high. It is a faith in the skill of trial counsel, the power of the process of cross-examination, and the skepticism, common sense, and critical faculties of judges and juries, which justify the conclusion that the exposure of weakness or fatal deficiencies in expert testimony may be left to the calling party's opponent.

In the majority of cases, dispute over the adequacy of the foundation for the expert's opinion will focus upon the use of a particular datum, or the absence of other data. There will be broad common ground—that is, no real dispute that much of the underlying data are both relevant and necessary to the expert's opinion—and in the end the jury will decide whether the expert's opinion is adequately based.

**4.** Dr. Nicholas gave the following opinion in response to this question:

A Well, my opinion is that the patient was injured as originally described. That he was struck in the face with a broad wooden object, a board if you will, across the front of his face which caused multiple injuries, cuts and bruises, and that after he fell from the motorcycle, that he sustained more abrasions from the gravel and the dirt that he fell onto and that he sustained a severe brain injury which has caused a permanent mental loss.

Q Okay. Can you tell me if there was anything, Doctor, about these injuries that you observed that is especially consistent with being hit with a board in the face as opposed to say simply falling over on a motorcycle going 30, 35 miles an hour and landing in gravel.

A Well, there were two things that confirmed my conclusion. The first being that there were wooden splinters that I removed and that Dr. Cavanaugh removed from his deep lacerations of his face. And also the manner in which the lacerations occurred. They appeared as if his tissue had been directly impacted such that his tissue exploded from the contact.

obviated or removed if presented then. Hofmann objected to Dr. Nicholas' competency on the claimed basis that the question required Dr. Nicholas to reconstruct the accident for which he was not qualified as an expert.

In *Vogt,* this court held that an objection to a doctor's legal conclusion in a deposition was waived for failure to object at the deposition. *Vogt* stated "no objection was made at the time of the taking of the deposition as should have been done pursuant to SDCL 15–6–32(d)(3)(A) and (B)." *Id.* at 637. In view of SDCL 15–6–32(d)(3)(A), the *Vogt* court obviously concluded that "the objection [was] one which might have been obviated or removed if presented at that time." In this case, the objection could not have been obviated or removed at the deposition. Dr. Nicholas was either qualified or not qualified to give the requested opinion and nothing more could be done until an objection was ruled on by the trial court. Thus, the objection was not waived. As stated in 8 C. Wright and A. Miller, *Federal Practice and Procedure* § 2153 (1970):

> Its general principle is to require defects in the taking of depositions to be pointed out promptly on pain of waiver. The purpose is to give the erring party an opportunity to correct the mistake, and to prevent waste of time and money by a subsequent claim that a deposition must be suppressed because of some technical error long ago. The one limited exception to the general rule, found in Rule 32(d)(3)(A), is consistent with this purpose, in that it provides that objections to competency, relevancy, or materiality that could not have been corrected if made at the time need not be made and are not waived. This provision avoids burdening the deposition with a number of objections. These objections as to defects that could not have been avoided in any event may be made at the trial when and if the deposition is offered. (footnote omitted).

■ Though the trial court erred and should have ruled on Hofmann's objection, the evidence was properly admitted. Contrary to Hofmann's assertion, the question did not require Dr. Nicholas to reconstruct the accident. It simply requested a medical opinion as to whether the injuries were consistent with what allegedly occurred on the day of the incident. Dr. Nicholas was clearly competent to give such an opinion. Therefore, the objection should have been overruled and the evidence received.

b. Hofmann's next claim is that the trial court erred in not striking the following portion of Dr. Nicholas' deposition:

Q Dr. Nicholas, I'm not going to beat around the bush and ask you about history and things like that and possibilities. In your mind, as a medical physician and a treating physician in this case and the person who saw Frank Zepp when he was brought into the emergency room and has treated him over the years, is there any doubt in your mind that he was hit in the face with a board?

[Hofmann's Counsel]: I'm going to object to the form of that question as not calling for proper conclusions [and] not being proper in ... form as far as expert testimony.

[Zepp's Counsel]: I will rephrase the question.

At trial, Hofmann requested that the court strike this portion of the deposition. He claims that this should have been done prior to reading the deposition to the jury. Zepp claims that objections in depositions should be treated like trial testimony and read to the jury as if the witness had testified at trial. Zepp also claims that Hofmann should have made a motion to strike.

■ It is clear under the language of SDCL 15–6–32(d)(3)(A) and (B) that errors should be corrected prior to reading the deposition at trial. The ideal in any trial is to keep improper and inflammatory questions or evidence from the jury. Consistent with this goal, a deposition which contains questions or evidence, which are properly objected to at the deposition, should be stricken prior to reading to the jury. Hofmann did not need to make a motion to strike at the deposition, as the objection sufficiently alerted Zepp to the improper

question and permitted him to rephrase it. In fact, Zepp stated he would rephrase it. Though the trial court erred in failing to strike that portion of the deposition, this was cumulative, as Dr. Nicholas was later permitted to give a similar opinion without objection.

c. Finally, Hofmann claims that the court erred in not striking a portion of the following deposition testimony of Dr. Nicholas:

Q  Doctor, based upon a reasonable degree of medical certainty, are you of the opinion that Frank Zepp was hit in the face with a board?

A  Uh-huh.ʹ I have no doubt, no reservations of any kind, that Frank Zepp was indeed hit in the face with a board-like object to the extent that it caused all of his injuries that we have listed.

[Hofmann's Counsel:]  I guess I will move to strike the answer as not responsive also.

At trial, Hofmann moved that Dr. Nicholas' answer following "Uh-huh" be stricken as non-responsive. The court denied this motion. Hofmann claims that the question asked for a "yes or no" answer and the rest of the answer was non-responsive.

 The court ruled that the answer was responsive, as the question was phrased such that Dr. Nicholas did not have to limit his answer to "yes or no." The trial court has broad discretion in ruling on objections. *Magbuhat, supra.* We cannot say the court abused its discretion in not striking the answer and ruling that it was responsive.

Affirmed.

WUEST, C.J., and HENDERSON, J., concur in result without writing.

MORGAN and MILLER, JJ., concur in result.

MILLER, Justice (concurring in result).

I disagree with the majority holding that the trial court did not abuse its discretion (1) in denying the expert testimony and (2) in the manner it ⟨handled the deposition testimony. I would hold that the trial

court abused its discretion in both areas, but that such error was not prejudicial.

Justice Henderson, speaking for this court in *K & E Land and Cattle, Inc. v. Mayer,* 330 N.W.2d 529, 533 (S.D.1983), defined "prejudicial error" as "that which in all probability must have produced some effect upon the final result and affected rights of the party assigning it."

Considering all of the other compelling evidence, including the eyewitness testimony, I am convinced that the error committed by the trial court had no effect on the result and the jury would have reached the same verdict. *See also Koupal & Anton, Inc. v. Wieczorek,* 375 N.W.2d 639 (S.D. 1985); *Shaull v. Hart,* 327 N.W.2d 50 (S.D. 1982); *State Highway Commission v. Beets,* 88 S.D. 536, 224 N.W.2d 567 (1974); and *Allen v. McLain,* 75 S.D. 520, 69 N.W.2d 390 (1955).

I am authorized to state that MORGAN, J., joins in this concurrence in result.