Ronald **MARTINO** and Virginia **Martino**, Plaintiffs and Appellees,

v.

**PARK JEFFERSON RACING ASSOCIATION, Defendant and Appellant.**

No. 13388.

Supreme Court of South Dakota.

Argued Oct. 28, 1981.

Decided Jan. 20, 1982.

---

James E. McCulloch of Minick, Nelson & McCulloch, Vermillion, for plaintiffs and appellees; Lee M. McCahren, Vermillion, on brief.

John Simko of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellant.

DUNN, Justice.

This is an appeal from a judgment based on a jury verdict in the amount of $25,000

awarded to appellee Ronald Martino (Martino) for personal injury and $7,500 awarded to appellee Virginia Martino for loss of consortium. We affirm.

Martino was a jockey for nine years. During the off season, he worked at a thoroughbred racehorse training ranch in Colorado. On August 22, 1976, Martino was riding a two-year-old horse, named "Opportunities Here," in the fifth race at Park Jefferson, South Dakota. At the start of the race, the horse broke from his position at the gate and took the lead. During the race, "Opportunities Here" bolted from the race course and ran through a removable railing. Martino was thrown from the horse into a telephone pole and received a fractured pelvis, fractured rib and punctured spleen. He missed the remainder of the 1976 season, but was able to return to work in Colorado on the ranch in November of 1976. He rode as a jockey during the 1977 and 1978 seasons, but has not ridden since 1978. He had to stop riding as a jockey because of the pain.

Park Jefferson race course is surrounded by wooden railings, most of which are painted white. The horses are taken on and off the track for training through a removable railing. This removable railing was unpainted on the day of the accident. It is through this railing that "Opportunities Here" bolted. Martino claimed at trial that the Park Jefferson Racing Association, appellant, had a duty under the South Dakota Racing Commission regulations to maintain their race track in good condition and that it violated this regulation by providing inadequate and unsafe fencing around the track infield, which caused Martino to sustain severe injuries. The jury found for the Martinos. Appellant appeals.

Appellant contends that the circuit court erred in permitting an economic expert to testify regarding the calculation of loss of future earning capacity. We do not agree. A medical expert, Dr. R. J. Black Schultz, testified via deposition that as a result of the accident, which prompted this suit, Martino suffered a permanent partial disability[1] rating of six percent, due to the lack of Achilles tendon response and pain. Dr. Schultz also testified that Martino was suffering from a sciatic nerve injury due to the accident. Martino testified that he can no longer ride horses as a jockey, or for long periods of time as a trainer, because of pain. Dr. Schultz's expert testimony, finding a six percent permanent partial disability and a sciatic nerve injury, is sufficient corroboration of Martino's claim for loss of future earning capacity as required by *McGovern v. Murray Taxi Co.*, 75 S.D. 151, 60 N.W.2d 211 (1953). To recover for loss of future earning capacity, Martino did not have to prove that he could no longer ride as a jockey as a result of the injury or prove actual loss of earnings, but rather impairment of his general earning capacity. *Schnebly v. Baker*, 217 N.W.2d 708 (Iowa 1974); *Weidner v. Lineback*, 82 S.D. 8, 140 N.W.2d 597 (1966). In light of this expert testimony, regarding Martino's permanent partial disability, it was proper for the circuit court to receive evidence from an economist regarding the calculation of loss of future earning capacity. *See Schmidt v. Forell*, 306 N.W.2d 876 (S.D.1981).

Appellant next contends that the economist's testimony regarding loss of future earning capacity was speculative and should have been excluded by the circuit court

1. Appellant contends that the circuit court erred in allowing Dr. Schultz to state his opinion about the degree of Martino's permanent partial disability as distinguished from the degree of impairment. In *McGovern v. Murray Taxi Co.*, 75 S.D. 151, 60 N.W.2d 211 (1953), we stated that a defendant's liability in damages may not be allowed to rest on the opinion of a jury without the help of science. Dr. Schultz's opinion with regard to the extent of Martino's disability was necessary to assist the jury in their determination of the appellant's liability.

See SDCL 19–15–2. This is not a workmen's compensation suit, under which an injury must be classified as either a disability or an impairment. *See Gross v. Workmen's Compensation Appeals Board*, 118 Cal.Rptr. 609, 44 Cal. App.3d 397 (1975); *White v. Woolery Stone Co., Inc.*, 396 N.E.2d 137 (Ind.App.1979); *Crown Products Company v. Brandenburg*, 126 Ind.App. 48, 129 N.E.2d 134 (1955). Thus, an expert's testimony regarding permanent partial disability is admissible.

because it was based on an age forty-five work life expectancy, included a sum for lost social security contributions, was based on post-injury earnings, and assumed that Park Jefferson would remain open. We do not agree.

■ Dr. Ralph J. Brown, an economist from the University of South Dakota, testified at trial that Martino's future earning capacity would be impaired to the extent of $39,481 as discounted to its present value as a result of this accident. This figure includes his loss of $21,055 as a jockey from 1979 through 1994, and $20,629 as a farm worker from 1976 through the future. These figures were based on an average work life expectancy for a jockey of forty-five. The wage figures were derived from appellee's earnings as (1) a jockey in 1978 compared to his earnings in 1979 as a trainer, for a difference of $67 per week for a nineteen-week racing schedule, and (2) his reduced earnings of $75 per month as a trainer because he was no longer able to ride horses for extensive periods of time. The total figure also included an adjustment for loss of social security contributions to be paid by his employer[2] and for taxes that Martino would have paid on his additional earnings.

■ Martino's work life expectancy is to be determined by the finder of fact. It can consider mortality tables, testimony of others in the same profession, the general health and physical condition of the plaintiff at the time of injury, whether he would have been subject to compulsory retirement, and the dangers of his occupation. *Sorenson v. Cargill, Inc.*, 281 Minn. 480, 163 N.W.2d 59 (1968); *Hallada v. Great Northern Railway*, 244 Minn. 81, 69 N.W.2d 673 (1955). In this case, the jury was instructed that Martino's life expectancy according to the Commissioners' Standard Ordinary Table of Mortality was 40.24 years. Jury Instruction # 21. At trial, a witness representing the Jockey Guild testified that the work life expectancy of a jockey was age 47. Dr. Brown based his computations on a work life expectancy for a jockey of age 45. Martino's work life expectancy is a question of fact to be determined by the jury and this determination affects the credibility of the economist's testimony rather than its admissibility.

■ The factors to be considered by the jury in determining the measure of damages for loss of earning capacity include the prior ability of the injured person and the extent to which the injuries affect a plaintiff's power to earn, the plaintiff's age, life expectancy, physical condition, occupation, skill, and habits of industry. *Byre v. Wieczorek*, 88 S.D. 185, 217 N.W.2d 151 (1974); *Weidner v. Lineback, supra; Nepstad v. Randall*, 82 S.D. 615, 152 N.W.2d 383 (1967). Loss of earning capacity " '. . . may be determined even in the absence of testimony as to plaintiff's earnings prior to the accident.' " *Byre v. Wieczorek*, 88 S.D. at 193, 217 N.W.2d at 155, quoting *Hrabak v. Hummel*, 55 F.Supp. 775, 779 (E.D.Penn. 1943), affirmed 143 F.2d 594 (3d Cir. 1944), certiorari denied 323 U.S. 724, 65 S.Ct. 57, 89 L.Ed. 582 (1944). "The mere fact plaintiff is earning more money now than he earned before the accident does not defeat his right to recover for impaired earning power reasonably certain to be suffered during the remainder of his life expectancy. It is a matter of common knowledge his earning power would be greater if he were full bodied and uninjured." *Weidner v. Lineback*, 82 S.D. at 19, 140 N.W.2d at 602–03. Therefore, it was proper for Dr. Brown to consider Martino's earnings after the injury to determine impairment of future earning capacity.

■ The purpose of an award of damages for loss of future earnings is " '. . . to compensate for the loss of earning capacity as distinguished from actual loss of earnings.' " *Weidner v. Lineback*, 82 S.D. at 19, 140 N.W.2d at 602, quoting *United States v.*

---

**2.** On cross-examination, Dr. Brown deducted $1,000 from the total figure in light of the fact that jockeys are self-employed and therefore would not lose employer social security contributions. This impeachment of Dr. Brown's testimony goes to his credibility as a witness rather than the admissibility of his testimony.

*Jacobs,* 308 F.2d 906, 907–08 (5th Cir. 1962). Because Martino's compensation is for general loss of earning capacity, it is irrelevant whether Park Jefferson will remain open in the future.

Dr. Brown's testimony set forth the factors upon which his opinion of loss of future earnings relied and it was for the trier of fact to determine the weight to be given this expert's testimony. *See Schmidt v. Forell, supra.*

Appellant's next contention is that the circuit court erred in giving two jury instructions. The first instruction in question, jury instruction number 22, read in part:

In determining the Plaintiff's loss of earning capacity, you may consider what he earned before the injury and what he is capable of earning after the injury, the plaintiff's age, life expectancy, his physical condition, his situation in life, his occupation, health and surroundings.

Appellant claims that no evidence of pre-injury earnings was admitted at trial and therefore under *Olesen v. Snyder,* 277 N.W.2d 729 (S.D.1979), the issue should not have been submitted to the jury. We disagree. Evidence was introduced at trial that prior to his accident in 1976 Martino averaged about $140 a week as a jockey during the racing season. Also, Martino testified that in 1975 he was earning about $650 a month as a farmhand between racing seasons. This evidence is sufficient to support the circuit court's submission of this instruction to the jury.

The second instruction in question, jury instruction number 17, provided:

A regulation of this state provides: 'Racing associations shall at all times maintain their race tracks in good condition and with a special consideration for the comfort and safety of the public, of the horses stabled, exercising or entered to race thereat, and of all those whose business requires their attendance thereat; and to this end shall have available adequate and proper implements to maintain a uniform track, weather permitting.'

Another regulation in this state provides:

'Each association shall provide all necessary equipment, materials and employees for proper maintenance of the racing strip, including adequate starter stands and rail closures, which shall be used in a straight-away race which begins beyond the stretch turn.'

This regulation sets the standard of care of the ordinarily careful and prudent person. If you find defendant violated it, such violation is negligence.

Appellant claims that these regulations do not set forth the standard of care necessary for compliance with the regulations by an ordinarily careful and prudent person. We do not agree. Appellant was required by the provisions of the regulations to maintain the race track in good condition sufficient to protect the safety of the public, the horses and all those persons whose business requires them to be in attendance at the race track. Specifically, appellant is required to provide adequate railing closures. These safety regulations fix a standard by which the fact of negligence may be determined.

As this court has previously held:

'The violation of a statute or ordinance, designed for the benefit of individuals, is of itself sufficient to prove such a breach of duty as will sustain an action for negligence brought by a person within the protected class if other elements of negligence concur. The statute or ordinance becomes the standard of care or the rule of the ordinarily careful and prudent person.'

*Albers v. Ottenbacher,* 79 S.D. 637, 641, 116 N.W.2d 529, 531 (1962) quoting *McCleod v. Tri-State Milling Co.,* 71 S.D. 362, 366–67, 24 N.W.2d 485, 487 (1946). *See also Ricketts v. Tusa,* 87 S.D. 702, 214 N.W.2d 77 (1974); *Weeks v. Prostrollo Sons, Inc.,* 84 S.D. 243, 169 N.W.2d 725 (1969). Jury instruction 17 defines appellant's standard of care and it was proper for the court to instruct the jury accordingly.

Appellant finally contends that the circuit court erred in refusing to grant its motion for directed verdict on the grounds that Martino assumed the risk as a matter of law and that the unpainted railing was not a proximate cause of the accident. We disagree.

When ruling on a motion for directed verdict, the circuit court must consider the evidence in the light most favorable to the nonmoving party and grant to the nonmoving party the benefit of every reasonable inference in their favor. A motion for directed verdict is properly denied if there is substantial evidence introduced that would allow reasonable minds to reach differing conclusions. *Lytle v. Morgan*, 270 N.W.2d 359 (S.D.1978); *Heiser v. Rodway*, 247 N.W.2d 65 (S.D.1976); *Beck v. Wessel*, 90 S.D. 107, 237 N.W.2d 905 (1976).

We recently stated in *Myers v. Lennox Co-op Ass'n*, 307 N.W.2d 863, 864 (S.D. 1981):

In order to support its assumption of risk defense, appellee must show that appellant not only had knowledge of the existence of the danger involved, whether actual or constructive, and an appreciation of its character, but also that appellant voluntarily accepted such risk by having a sufficient amount of time, knowledge, and experience to make an intelligent choice. *Wolf v. Graber*, supra; *Thomas v. St. Mary's Roman Catholic Church*, 283 N.W.2d 254 (S.D.1979).

■ Martino introduced at trial a South Dakota Racing Commission regulation that requires jockeys to fulfill all racing engagements. The regulation was also incorporated into jury instruction number 18. In light of this evidence, the voluntariness of Martino's assumption of risk was at issue and was a question on which reasonable minds could differ. The question was properly submitted to the jury.

With regard to the proximate cause issue, this court has recognized that the mere violation of a statute is insufficient to support an action for damages. Rather, a plaintiff must show that the violation of a statutory duty was the proximate cause of his injury to support a recovery in negligence. *Serles v. Braun*, 79 S.D. 456, 113 N.W.2d 216 (1962); *Zeller v. Pikovsky*, 66 S.D. 71, 278 N.W. 174 (1938). In *Leslie v. City of Bonesteel*, 303 N.W.2d 117, 119 (S.D. 1981), we stated: "For proximate cause to exist, '[t]he harm suffered must be found to be a foreseeable consequence of the act complained of.... [T]he negligent act must be a substantial factor in bringing about the harm.' *Williams v. United States*, 450 F.Supp. 1040, 1046 (D.S.D. 1978)."

The term proximate cause is defined by this court as: "[A]n immediate cause which, in natural or probable sequence, produces the injury complained of. This excludes the idea of legal liability based on mere speculative possibilities or circumstances and conditions remotely connected to the events leading up to an injury." *Mulder v. Tague*, 85 S.D. 544, 549, 186 N.W.2d 884, 887 (1971) (citations omitted). *See also Leslie v. City of Bonesteel, supra; Goff v. Wang*, 296 N.W.2d 729 (S.D.1980). We further stated in *Mulder* that for proximate cause to exist "the defendant's conduct [must have] such an effect in producing the harm as to lead reasonable men to regard it as a cause" of the plaintiff's injury. *Mulder v. Tague*, 85 S.D. at 549, 186 N.W.2d at 887.

■ Martino introduced evidence at trial to show that horses are color blind and can only distinguish between black and white with all other colors appearing as shades of grey. Thus, because the railing was not painted white, it may have visually blended with the grey infield. Furthermore, the evidence indicated that the horses are accustomed to leaving the race track at the specific location where the horse bolted. We have examined the record in the light most favorable to Martino and find there was substantial evidence upon which reasonable minds could differ regarding the issue of whether the unpainted railing was the proximate cause of Martino's injury. Therefore, the judge did not err in submitting this question to the jury.

We affirm the judgment of the circuit court.

All the Justices concur.