**Charles LARABEE, Appellant,**

v.

**M M & L INTERNATIONAL CORPORATION, Lafi Jafari, Appellees.**

**No. 89–1604.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1989.

Decided Feb. 16, 1990.

William M. Lamson, Jr., Omaha, Neb., for appellant.

James L. Quinlan, Omaha, Neb., for appellees.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

Plaintiff Larabee appeals from the district court's grant of defendants' motion for judgment notwithstanding the verdict. Larabee sustained permanent injuries when he fell from a roof he was reshingling for defendant Jafari. Larabee alleged his fall was caused by Jafari's failure to provide a safe place to work, and a jury awarded Larabee $282,500 in compensation for his injuries. In granting defendants' motion for judgment notwithstanding the verdict, the district court held plaintiff had failed to submit sufficient evidence that Jafari's negligence caused his injuries. We disagree with the court's finding and reverse.

## I.

In reviewing the trial court's grant of defendants' motion for judgment notwithstanding the verdict, we examine the evidence and all reasonable inferences therefrom in the light most favorable to plaintiff Larabee. *See In re Knickerbocker*, 827 F.2d 281, 284 (8th Cir.1987); *Nebraska Public Power District v. Austin Power, Inc.*, 773 F.2d 960, 968–69 (8th Cir.1985). Judgment notwithstanding the verdict is improper if the evidence so viewed would allow reasonable jurors to accept plaintiff's version of the facts. *Knickerbocker*, 827 F.2d at 284; *Nebraska Power*, 773 F.2d at 969.

Plaintiff Larabee was hired by defendant Jafari in May, 1984, to reshingle the roof of one of 60 homes owned and maintained by Jafari through his corporation, M M & L International, Inc.[1] Jafari has a Ph.D. in business administration and has been in the real estate business since 1971. Larabee had just moved to Omaha, Nebraska, from rural Iowa, in search of work because of the distressed farm economy.[2] Larabee and his wife rented a home from Jafari, which Jafari then hired Larabee to reroof. Jafari agreed to provide Larabee with equipment and supplies for the job, and Larabee obtained these supplies from the various locations Jafari maintained for storage and upkeep of his properties.

The home Larabee was hired to reshingle was 40 to 50 years old. The roof had a 45 degree pitch and $2'' \times 4''$ support rafters. Wood sheathing of $1'' \times 12''$ planks ran over the rafters and provided the base for the shingles. Because the planks did not fit closely together, there were three inch gaps between sheathing planks. Jafari testified he had inspected the home thoroughly prior to purchasing it, including all the crawl spaces. The gaps in the sheathing were plainly visible from the roof crawl space. The sheathing originally was covered with a layer of wood shingles, which was covered over by two additional layers of asphalt shingles.

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. Jafari testified he managed and operated defendant M M & L International Corp., and the parties stipulated that all of Jafari's acts are imputable to M M & L.

2. Larabee had farmed 190 acres prior to 1984 and had worked other jobs, including some construction, to supplement his farm income.

Larabee recommended to Jafari that the old layers of shingles be removed and that a new layer of shingles be applied directly to the wood sheathing, but Jafari refused on the ground that this procedure was too expensive. The Omaha building code in effect at the time provided that the application of shingles on top of shingles could only be done with "solid or closely fitting sheathing." Jafari admitted he "knew all about building codes," both from his studies and from his experience in the real estate business.[3] Dr. Harold Robertson, a professor of construction sciences at the University of Nebraska at Lincoln and a former home contractor, testified that reshingling the roof without first removing the old shingles violated the city's building code.

Larabee proceeded to add the requested additional layer of shingles, using the nails, shingles, ladder, and other materials provided by Jafari. When Larabee could no longer use a ladder to tack the new layer of shingles on, he constructed "toe holds" or "roof jacks" from the 2" × 4" boards Jafari provided him.[4] Larabee doubled up a piece of wire, wrapped it twice around each end of the toe board, and then nailed the wire to the roof to secure the board. Professor Robertson testified one of the dangers presented by nailing over the multiple layer of shingles instead of removing all the shingles as required by the building code was that a worker would fail to hit something solid when he was nailing in a toe hold and would not be adequately supported on the roof.

Larabee had made two toe holds and had been using them to stand on for approximately two to three weeks when the accident at issue occurred. Larabee testified he had nearly finished the roof, and was standing with one foot next to or on a bunch of shingles that he had placed on the toe board. The other foot was up on a

dormer window frame. He has no recollection of the fall itself, and remembers only waking up in the hospital. His wife did not witness the accident, but ran outside after being summoned by a neighbor. She found Larabee had fallen off the roof and onto the rock wall and driveway immediately below where he was working. Plaintiff sustained serious, permanent injuries, particularly to his right arm and wrist.

When Larabee returned home from the hospital, he saw the toe board lying up on the roof with only one end of the wire attached. The other end had come loose. Shortly thereafter, the Larabees returned to Iowa, and Jafari hired someone else to finish the roof. Professor Robertson inspected the roof in February, 1988, and found one side of the toe board wire still attached. Jafari's counsel refused to allow Robertson to remove any nails from the roof to examine them.

At trial, Robertson testified that industry standards required either scaffolding or a life line to prevent a worker from falling if the roof edge is more than 16 feet above ground level. Larabee was working at a height of approximately 18 feet when he fell, but Jafari had not provided Larabee with either scaffolding or a life line.

## II.

At trial, counsel stipulated that Larabee was an independent contractor hired by Jafari to perform the roofing job.[5] Under Nebraska law, Jafari, as the owner of the premises, had a duty to provide Larabee, a business invitee, with a safe place to work. *Zrust v. Spenser Foods, Inc.*, 667 F.2d 760, 763 (8th Cir.1982); *Petznick v. United States*, 575 F.Supp. 698, 704–05 (D.Neb.1983); *Kliewer v. Wall Construction Co.*, 229 Neb. 867, 429 N.W.2d 373, 377 (1988); *Simon v. Omaha Public Power District*, 189 Neb. 183, 202 N.W.2d 157, 163–64 (1972).

3. Plaintiff had also offered to prove Jafari had more than thirty residences reshingled during 1984, the year he hired Larabee, but this offer was refused by the district court.

4. Larabee had asked Jafari for 2" × 4" boards, but Jafari only had a couple of 2" × 4" boards

and asked Larabee if he could nail together some 1" × 6" boards and use them.

5. Apparently because of this status, plaintiff received no worker's compensation benefits.

As the district court correctly instructed the jury, this duty extends to known or obvious dangers if the danger involves an unreasonable risk to the invitee. *Burns v. Veterans of Foreign Wars*, 231 Neb. 844, 438 N.W.2d 485, 493 (1989); Restatement (Second) of Torts § 343A, comment f (1965). The landowner may be liable for injuries sustained by the invitee when the landowner reasonably should expect that the invitee either would not fully appreciate the risk or would not act to protect himself or herself from the danger. *Burns*, 438 N.W.2d at 493; *Carnes v. Weesner*, 229 Neb. 641, 428 N.W.2d 493, 498–99 (1988); *Tichenor v. Lohaus*, 212 Neb. 218, 322 N.W.2d 629, 632–33 (1982).

The Restatement cites as examples situations where an invitee's attention is distracted or where there effectively is no alternative available to taking the risk. Restatement (Second) of Torts § 343A, comment f, illustrations 2–5 (1965). We upheld a jury verdict in favor of a business invitee in *Zrust v. Spenser Foods, Inc.*, 667 F.2d 760 (8th Cir.1982), finding the trial court properly instructed the jury that a landowner could be liable for an open and obvious danger when the duties of the invitee's employment required unavoidable exposure to the danger. *Id.* at 765. *See Corbin v. Mann's International Meat Specialties, Inc.*, 214 Neb. 222, 333 N.W.2d 668, 670 (1983); *Tichenor*, 322 N.W.2d at 631–34.

In *Zrust*, the plaintiff alleged the defendant breached its duty to provide a safe place to work when it failed to furnish a safety device to ensure that trucks which stopped at defendant's gate remained motionless while security guards inspected them. Plaintiff's husband was a security guard who was killed when a truck ran him over during an inspection. *Zrust*, 667 F.2d at 762–63. *See also Petznick*, 575 F.Supp. at 707 (defendant negligent in allowing plaintiff to work on energized transmission lines without adequate equipment for his own protection).

The court instructed the jury in this case that plaintiff could recover only if he proved, by a preponderance of the evidence, that defendants were negligent in failing to provide plaintiff with a safe place to work and that such negligence was the proximate cause of the plaintiff's injuries. *See Burns*, 438 N.W.2d at 490; *Kliewer*, 429 N.W.2d at 377. In granting defendants' motion for judgment notwithstanding the verdict, the court ruled plaintiff had presented evidence from which the jury could conclude defendants were negligent. Nonetheless, the court reasoned that plaintiff had failed to present sufficient evidence of proximate cause because "the jury could only speculate that the nail securing the toehold pulled loose either because it was pounded into a gap in the sheathing or because the layers of existing shingles were too thick to hold the nail securely." The court further concluded that the jury could not reasonably have found that the lack of safety equipment caused plaintiff's injuries because "[t]here was no evidence presented indicating that such equipment would have prevented the fall or the injuries sustained by the plaintiff."

### III.

We begin with the observation that questions of proximate cause are ordinarily for resolution by the jury. *Farmers Cooperative Elevator Association v. Strand*, 382 F.2d 224, 228 (8th Cir.) (applying Nebraska law), *cert. denied*, 389 U.S. 1014, 88 S.Ct. 589, 19 L.Ed.2d 659 (1967); *Fonda v. Northwestern Public Service Co.*, 138 Neb. 262, 292 N.W. 712, 718 (1940); *Prosser & Keeton on Torts* § 41 at 270 (5th ed. 1984). A jury question is presented if plaintiff has introduced evidence from which reasonable persons may conclude it is more probable than not that plaintiff's fall from the roof was caused by the defendants' breach of duty. *See Prosser & Keeton on Torts*, § 41 at 269. Circumstantial evidence, expert testimony, or common knowledge may provide a basis from which the causal sequence may be inferred. *Id.* at 270; *Fonda*, 292 N.W. at 718.

"Where facts and circumstances are established from which the manner of sustaining injuries can be logically inferred, an

issue is presented for the jury." *Fonda,* 292 N.W. at 718. In this case, plaintiff presented direct evidence Jafari breached his duty of providing a safe place to work by requiring plaintiff to apply a layer of shingles in a manner that violated the Omaha building code and by failing to provide safety equipment consistent with industry standards. The precise harm the code and industry safety standards seek to prevent in fact occurred: plaintiff was injured when he fell from the roof. Plaintiff testified that he fell when he was standing with one foot on a toe hold, which was secured by nails provided by defendant. Plaintiff's observation of the dangling toe hold shortly after his accident provides sufficient evidence from which a jury could conclude, based on their own experience, knowledge, and judgment, that the cause of plaintiff's fall more probably than not was defendant's breach of duty.[6]

The jury properly could infer that defendant's negligence caused plaintiff's fall for reasons best described by Professors Prosser and Keeton:

> When a child is drowned in a swimming pool, no one can say with certainty that a lifeguard would have saved the child; but the experience of the community permits the conclusion that the absence of the guard played a significant part in the drowning.... And whether the defendant's negligence consists of the violation of some statutory safety regulation, or the breach of a plain common law duty of care, the court can scarcely overlook the fact that the injury which has in fact occurred is precisely the sort of thing that proper care on the part of the defendant would be intended to prevent, and accordingly allow a certain liberality to the jury in drawing its conclusion.

*Prosser & Keeton on Torts,* § 41 at 270 (footnote omitted).

The cases cited by defendants where judgment notwithstanding the verdict has been found proper are readily distinguishable and appear to rest more on the ground that defendant was not negligent in the first place. *See, e.g., Bahe v. Safeway Stores, Inc.,* 186 Neb. 228, 182 N.W.2d 202, 204–05 (1970) (pop bottle inexplicably fell from gondola in defendant's store and injured plaintiff's toe; most logical explanation was that act of plaintiff caused accident). As the district court ruled, there is ample evidence from which the jury in this case could find defendants were negligent. Because we also find sufficient evidence from which the jury could conclude this negligence proximately caused plaintiff's injuries, we hold the district court erred in granting defendants' motion for judgment notwithstanding the verdict.

### IV.

Defendants moved the district court in the alternative for a new trial, which the district court denied without comment. On appeal, defendants urge this Court either to reverse the district court's ruling and grant a new trial or to remand this matter to the district court for reconsideration. Rule 50(c) of the Federal Rules of Civil Procedure provides that when a court grants a motion for judgment notwithstanding the verdict and has before it an alternative motion for a new trial,

> the court shall also rule on the motion for a new trial ... by determining whether it should be granted if the judgment [n.o.v.] is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial.

---

**6.** Plaintiff offered testimony by Professor Robertson concerning his opinion as to the precise cause of the accident, but the district court refused to admit this evidence. While unnecessary to meet plaintiff's burden of proof, we believe, contrary to the district court, that Professor Robertson's testimony would have been helpful to the jury. *See* Fed.R.Evid. 702. We acknowledge the district court ordinarily has broad discretion to admit or exclude expert testimony, but note that "doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility." J. Weinstein & M. Berger, *Weinstein's Evidence,* para. 702[02] at 702–30 (1988). *Cf. Breidor v. Sears, Roebuck & Co.,* 722 F.2d 1134, 1138–39 (3d Cir.1983) (expert's opinion on cause of fire should have been admitted).

Fed.R.Civ.P. 50(c).[7]

■ When, as here, the district court denies the motion for a new trial, defendants may on appeal seek to uphold the court's j.n.o.v. ruling in their favor and may also urge "that the trial court committed error in conditionally denying the new trial," without taking a cross-appeal. *See* Fed.R.Civ.P. 50(c), advisory committee notes; *Clements v. General Accident Insurance Co.*, 821 F.2d 489, 493 (8th Cir. 1987). If an appellate court determines the district court's grant of judgment notwithstanding the verdict was improper, it generally has three options: (1) to order entry of judgment on the verdict; (2) to reverse the denial of the motion for new trial and order a new trial; or (3) to remand to the district court for reconsideration of the motion for a new trial. *See generally* 5A Moore's Federal Practice para. 50.14 at 50–104 (1989); *Cargill, Inc. v. Weston*, 520 F.2d 669, 672 (8th Cir.1975).

■ In *Clements v. General Accident Insurance Co.*, 821 F.2d 489 (8th Cir.1987), we remanded defendant's motion for a new trial to the district court for reconsideration after reversing the court's grant of defendant's j.n.o.v. motion, because it was clear the district court denied defendant's new trial motion solely in light of its entry of judgment in defendant's favor. *See id.* at 493. Such is not the case here, and although our review would have been aided by the specific findings required by Rule 50(c), we conclude that a remand for such findings is not necessary for purposes of our decision. *Cf. Talley v. United States Postal Service*, 720 F.2d 505, 508 (8th Cir. 1983) (remand unnecessary where complete understanding of claim possible from the record on appeal).

We have reviewed each ground asserted by defendants as a reason for overturning the district court's denial of their motion for a new trial, and find none which persuade us the court abused its discretion in denying the motion. Accordingly, we find the proper course in this case is to reverse with instructions that the jury's verdict be reinstated and that judgment be entered thereon in accordance with the jury's verdict. *See Compton v. United States*, 377 F.2d 408, 412 (8th Cir.1967).

V.

Because we find the district court erred in granting judgment notwithstanding the verdict, and because defendants have failed to convince us the district court abused its discretion in denying their motion for a new trial, the district court's entry of judgment in favor of defendants is reversed and the court is instructed to enter judgment in favor of plaintiff in accordance with the jury's verdict.

---

7. Ruling in the alternative does not affect the finality of the court's grant of judgment notwithstanding the verdict. *See* Fed.R.Civ.P. 50(c). As the Rule itself provides:

  If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered. In case the motion for a new trial has been conditionally denied, the appellee on appeal may assert error in that denial; and if the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court.