James **MARNETTE**, Plaintiff and Appellant,

v.

Stephan Thomas **MORGAN**, Defendant and Appellee.

No. 17433.

Supreme Court of South Dakota.

Considered on Briefs Sept. 11, 1991.

Reassigned Dec. 27, 1991.

Decided May 13, 1992.

Thomas P. Tonner of Tonner, Tobin & King, Aberdeen, for plaintiff and appellant.

Charles B. Kornmann of Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for defendant and appellee.

HENDERSON, Justice (on reassignment).

## NATURE OF ACTION/PARTIES/HOLDING

This appeal centers around a very minor accident. For purposes of clarity and convenience, we shall refer to James Marnette Plaintiff/Appellant, as Marnette. We refer to Stephan Thomas Morgan, defendant, appellee, as Morgan. Marnette was awarded $924.39. He appeals this award based upon an alleged evidentiary error.

Determining there was no abuse of discretion by the trial court in disallowing testimony from a vocational expert, we affirm.

## FACTS

On March 6, 1985, Marnette was injured when the vehicle in which he was a passenger was involved in an accident. Morgan's vehicle was traveling at approximately 20

m.p.h. when he struck a vehicle operated by Susi Weber (Weber), which was traveling in the same direction as Morgan, but had slowed due to congested traffic. Weber's vehicle was propelled forward by the collision and struck a vehicle, owned by Hanson, in which Marnette was a passenger, at a speed of two miles per hour.

Marnette brought suit against Morgan on March 1, 1988, alleging Morgan was negligent in causing the accident. Marnette originally sought damages for pain and suffering in the amount of $30,000.00 and special damages in the amount of $2,500.00. On December 10, 1991, he amended his complaint to include pain and suffering, disability and economic loss in the amount of $250,000.00 and special damages in the amount of $3,000.00.

Prior to trial, Morgan admitted fault in causing the motor vehicle accident on March 6, 1985. The jury was presented with evidence which only related to Marnette's damages. The jury heard testimony from Marnette, his treating physicians, and various experts and other witnesses regarding the extent of Marnette's damages. The jury returned a verdict of $1,400.00 which was reduced to $924.39, pursuant to SDCL 15–6–68, after Marnette refused an offer of judgment made December 29, 1989.*

At trial, Marnette, in an attempt to heighten damages, called Rick Ostrander (Ostrander), a vocational rehabilitation specialist, to testify as to his vocational evaluation of Marnette and his loss of employability. Marnette received a seven percent impairment rating from his physicians. Ostrander was to offer testimony to the effect that Marnette had experienced a thirty percent reduction in his employment capacity, a thirty percent reduction in earnings advancement, and an increase of unemployment of 2.4 weeks each year. Dr. Ralph Brown, as part of this evidentiary plan by Marnette, was to then testify to economic loss based on Ostrander's opinions.

Morgan countered this plan by moving to enjoin Ostrander's testimony on the grounds that it lacked foundation and was speculative. The trial court ruled on Morgan's motion. It limited Ostrander's testimony to the seven percent impairment testified to by Marnette's doctors. The trial court stated there had been no medical testimony that Marnette was restricted from handling certain types of occupations. Therefore, the trial court ruled that Ostrander's testimony concerning restricted employment was speculative and would not permit its introduction.

### ISSUE

■ Did the trial court abuse its discretion by denying Marnette's presentation of testimony by a vocational expert? We hold that it did not.

### DECISION

We are controlled by precedent. We have previously held: "The trial court's evidentiary rulings are presumed correct and will not be reversed unless there is a clear abuse of discretion." *Stormo v. Strong*, 469 N.W.2d 816, 820 (S.D.1991) (citing *Zepp v. Hofmann*, 444 N.W.2d 28, 31 (S.D.1989)).

We have before us a calculated effort to build damages where they did not exist. Subsequent to this very minor accident, Marnette (Plaintiff) participated vigorously in sports events. He did not see a doctor until eight months after this accident. And this was spawned by the advice of an Aberdeen, South Dakota attorney. In point of fact, Marnette told the investigating officer and Morgan that he was not hurt.

Medical testimony, from a treating physician, was presented to the jury that Marnette did not follow his doctor's orders.

Exhibit 1 was introduced which is a reflection of Marnette's work history. He worked a 40 hour week every year, up until

---

* SDCL 15–6–68 reads in pertinent part: "... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer...."

The costs incurred by Morgan after his December 29, 1989, offer were $475.61, and the $1,400.00 verdict was reduced accordingly.

the date of trial. This all went before the jury for its consideration.

Testimony, very damning to Marnette's cause, came from Marnette's own mouth: "There's nothing I can't do because of the accident." Obviously, it is not difficult to expect a jury to award damages, into the thousands of dollars, when such evidence impales Marnette's plan to heighten damages. Here, the evidence justified the verdict. Inter alia, no testimony was introduced by any doctor that Marnette had a disability. Dr. Ivey revealed that the existence of a "permanent medical impairment does not automatically support the presumption that there is a disability as well."

There were insufficient facts for this vocational specialist to state his opinion. Marnette attempted to present evidence from Ostrander, the vocational specialist, that plaintiff, who claimed no loss of work time from 1985 through 1990 would sustain, in the future, a 30% reduction in his capacity for employment; and, further, would be unemployed for 2.4 weeks each year for the rest of his life. Ostrander has no medical training at all. He never talked with Marnette's employer or Dr. Benson or Dr. Winkler or with Dr. Bledsoe. He did not examine any employment records of Marnette. Further, Dr. Ivey testified that there was nothing to indicate that Marnette would be restricted from social, employment, or recreational pursuits.

■ In short, the "cap" which was placed upon Ostrander's testimony by the trial court, was wise. *Cozine, Weidner, Hoffman, Alberts, Donahue, Miller,* infra. And, particularly, when an appellate court focuses upon a record which reflects that there was no testimony elicited from any doctor that Marnette could not perform any type of job. Medically, Marnette's case was woefully weak. Under this record, where there was no testimony that a loss of earning capacity was reasonably certain to result in the future, an award for such an item of damage is improper. *Weidner v. Lineback,* 140 N.W.2d 597 (S.D.1966).

■ We noted above that: "Inter alia, no testimony was introduced by any doctor that Marnette had a disability." In this context we call attention to our holding in *Cozine v. Midwest Coast Transport, Inc.,* 454 N.W.2d 548, 552 (S.D.1990), wherein we said: "The hearing examiner should have considered other evidence, such as Cozine's vocational expert regarding the loss of employability and the testimony of [his doctor]." *Cozine,* 454 N.W.2d at 552. We do not swerve from that holding. However, admittance of such testimony depends upon the facts of the case. We continue to hold that a disability may be established through testimony other than a doctor. There is a distinction between a *disability rating* and an *impairment rating.* Instantly, we must recognize that Marnette testified: "There's nothing I can't do because of the accident."

We note the distinction between a disability rating and an impairment rating. As we stated in *Cozine:*

> Although the *medical impairment* rating given by a doctor is an important factor, the extent of *loss of use* does not necessarily equal the extent of medical impairment. (Emphasis added).

*Id.* at 552.

In *Cozine,* we further quoted with approval from the American Medical Association *Guide to the Evaluation of Permanent Impairment,* (2nd Ed.1984), wherein it is stated:

> Permanent medical impairment is related directly to the health status of the individual, *whereas disability can be determined only within the context of the personal, social, or occupational demands, or statutory or regulatory requirements that the individual is unable to meet as a result of the impairment.* (Emphasis added.)

In *Cozine,* we allowed the testimony of a vocational expert to establish loss of use: "A medical impairment rating simply is not intended to measure loss of use." There, Cozine was unable to do any activity that would involve the use of the right upper extremity. But, in contradistinction, Marnette testifies: "There's nothing I can't do because of the accident."

██ As the appellate body, we owe a duty, firmly entrenched by stare decisis, to review evidence in a light most favorable to the prevailing party (Morgan); and conflicting evidence is to be resolved to support the verdict. *Hoffman v. Royer*, 359 N.W.2d 387, 388 (S.D.1984). We have done so.

██ In this case, we note that no exceptions were taken to the jury instructions. The trial court was patently fair to Marnette in the instructions. The jury was permitted under Instruction No. 16 to award future damages for permanent injury. Per Instruction No. 19, the jury could award damages for disability, pain, suffering and mental anguish experienced and reasonably certain to be experienced in the future as a result of the injury, for the reasonable expenses of necessary medical care, treatment and services received and the value of the reasonable expenses of such items in the future. Here, jury awarded nothing for any of these items other than some of the medical bills. This was all within the jury's province. As a reviewing court, we are required to view the evidence and all reasonable inferences therefrom in a light most favorable to verdict winner. *Alberts v. Mutual Serv. Cas. Ins. Co.*, 80 S.D. 303, 308, 123 N.W.2d 96, 99 (1963). Clearly, the trial court gave Marnette an opportunity to recover far more damages than he received by way of verdict.

██ We should not, and cannot, disturb this verdict unless the trial court *clearly* abused its discretion. We also review an evidence question such as this, thusly: Could a judicial mind, in view of the law and the facts of the case, reasonably have reached such a conclusion (one of inadmissibility in this instance)? *Matter of Estate of Donahue*, 464 N.W.2d 393, 395 (S.D. 1990). Considering the evidence, the trial court reasonably ruled on Morgan's objection.

██ In conclusion, the trial court forbade this rehabilitation specialist from expressing opinions which were *not supported by the evidence*. To the contrary, the evidence militates against the special-ist's opinions. Experts cannot conjure evidence when it does not exist. Ostrander was prevented from giving evidence, by way of opinion, that Marnette would experience a 30% reduction in his capacity for employment and increases of unemployment of 24 weeks each year. Compare this to his own testimony that "There's nothing I can't do because of the accident." We continue to recognize that a party is bound by his (her) testimony. *Miller v. Stevens*, 63 S.D. 10, 17, 256 N.W. 152 (1934); 30 Am.Jur.2d Evidence § 1087 (1967).

Trial court did not abuse its discretion. Through an expert, Marnette is trying to elevate his damage claim above his own testimony and the overwhelming evidence produced before the jury. *Klatt v. Continental Insurance Co.*, 409 N.W.2d 366, 370 (S.D.1987); *Romey v. Landers*, 392 N.W.2d 415, 421 (S.D.1986). We will not permit him to do so.

Affirmed.

MILLER, C.J., and WUEST, J., concur.

SABERS and AMUNDSON, JJ., dissent.

SABERS, Justice (dissenting).

I join the dissent of Justice Amundson.

A careful reading of the majority opinion shows that it violates the letter and/or spirit of four important recent cases of this court. *Stormo v. Strong*, 469 N.W.2d 816, 820 (S.D.1991); *Cozine v. Midwest Coast Transport, Inc.*, 454 N.W.2d 548, 553–54 (S.D.1990); *Zepp v. Hofmann*, 444 N.W.2d 28, 31 (S.D.1989); and *Martino v. Park Jefferson Racing Ass'n.*, 315 N.W.2d 309, 312–13 (S.D.1982).

By arbitrarily limiting the testimony of the vocational rehabilitation expert regarding loss of employability, the trial court and the majority opinion also violate the letter and/or spirit of SDCL 19–15–2, 3 and 4 (Fed.R.Evid. 702, 703 and 704). It is interesting to note that the majority opinion can be searched in vain without finding even one reference to these statutes. All this, despite the majority's proclamation, "We are controlled by precedent."

The majority asserts that "[T]he 'cap' which was placed upon Ostrander's testimony by the trial court, was wise." The majority also states that:

> As the appellate body, we owe a duty, firmly entrenched by stare decisis, to review evidence in a light most favorable to the prevailing party (Morgan); and conflicting evidence is to be resolved to support the verdict. *Hoffman v. Royer,* 359 N.W.2d 387, 388 (S.D.1984). We have done so.

It is easy to lose one's focus on an evidentiary ruling when distracted by sufficiency of the evidence, which is not even an issue in this case. In this case, the issue and our duty is simply to determine whether the evidence was admissible. It was. Therefore, we should reverse and remand for a fair trial.

AMUNDSON, Justice (dissenting).

If the issue in this case was whether or not the trial court erred in not allowing the testimony of Ostrander in toto, I would concur.[1] That is not the precise issue before this court, however. I could agree that trial court could have completely excluded the testimony. *See, e.g., Black v. Ryder/P.I.E. Nationwide, Inc.,* 930 F.2d 505 (6th Cir.1991). The trial court made a determination that Ostrander was qualified as an expert, then imposed limitations on this testimony. However, once it allowed Ostrander to testify in regards to the effect of the seven percent impairment, it should not have limited Ostrander's testimony about how that impairment effected Marnette's future earning capacity or future vocational employability. The majori-

ty argues that Ostrander's testimony regarding lost earning capacity is inconsistent with the statements made by Marnette, and therefore, properly excluded. Other courts have held, however, "that the extent to which the facts are inconsistent with the expert's opinions affects only the weight to be given to the opinions, not their admissibility." *Grote v. Estate of Franklin* (citations omitted), 214 Ill.App.3d 261, 157 Ill. Dec. 942, 573 N.E.2d 360 (1991); *see also Loudermill v. Dow Chemical Co.,* 863 F.2d 566 (8th Cir.1988) (factual basis of expert opinion goes to the credibility of the testimony, not the admissibility); *Jones v. Otis Elevator Co.,* 861 F.2d 655 (11th Cir.1988) (weaknesses in underpinnings of expert's opinion go to its weight rather than to its admissibility); *Century 21 Page One Realty v. Naghad,* 760 S.W.2d 305 (Tex.App.— Texarkana 1988) (the factual basis upon which an expert arrives at his opinion goes to the weight of his testimony and not to the admissibility); *McPherson v. Buege,* 360 N.W.2d 344 (Minn.App.1984) (any alleged deficiencies in the factual basis go more to the weight of the expert's testimony than to its admissibility).

It is also noteworthy that the trial court, after hearing the testimony of Marnette which the majority construes as damning to his case, still instructed the jury on loss of earning capacity.[2] Trial court could not have instructed the jury on loss of earning capacity unless it found the evidence warranted such an instruction. *Wheeldon v. Madison,* 374 N.W.2d 367 (S.D.1985). While there must be some factual data to support the opinion of an expert, these facts need not be admissible in evidence in

---

1. The defendant moved the court to exclude the opinion testimony of witness Ostrander since he had no medical qualifications, and testimony was pure speculation, lacking any foundation. The trial court ruled as follows on this defense motion:

> The court will clarify its ruling. Mr. Ostrander can testify as to the 7% impairment that it might affect his various occupations up to 7% but there's no medical testimony which has been presented that will allow him to testify that he can't handle certain occupations because there's no foundation for such. So, if you want to use him to testify that any occupation he goes into he might be affected up to a 7% reduction, that's fine but to say

that he cannot handle certain occupations, there's no medical foundation for that.

2. The trial court's instruction No. 19 read in part as follows:

> ... The factors to be considered in determining the measure of damages for loss of earning capacity include what he earned before the injury and what he is capable of earning after the injury, the prior ability of the injured person and the extent to which the injuries affect *his power to earn,* his age, life expectancy, physical condition, *occupation,* skill and *habits of industry.* (Emphasis added.)

support of the expert testimony. *Stormo,* 469 N.W.2d 816, 820; *Zepp,* 444 N.W.2d 28, 31; *State v. Gallegos,* 316 N.W.2d 634, 636–37 (S.D.1982). In fact, SDCL 19–15–4 has been interpreted to allow expert testimony which is lacking in foundation.[3] *Stormo,* 469 N.W.2d at 820 (citing *Zepp,* 444 N.W.2d at 31).

Ostrander's testimony was based on the medical reports of two treating physicians, a deposition of one of those physicians, and a personal interview with Marnette. Marnette argues that it is common practice for vocational experts to rely on this type of information and that SDCL 19–15–3 and 19–15–4 would support admission of Ostrander's testimony.[4] This is further buttressed by the testimony of Ostrander who testified that it is common practice for a vocational expert to, in part, base his opinion on the medical impairment rating rendered by a treating or evaluating physician.

This court recently considered the admissibility of expert testimony regarding loss of earning capacity. In *Stormo,* we stated that as long as the expert's testimony disclosed the basis on which his or her opinion of loss of future earnings relied, it is for the jury to determine the weight to be accorded such testimony. *Stormo,* 469 N.W.2d at 821 (citing *Martino v. Park Jefferson Racing Ass'n.,* 315 N.W.2d 309, 312–13 (S.D.1982)). We concluded in both *Stormo* and *Martino,* that a permanent partial disability rating provided a sufficient basis for the trial court to receive evidence from an economist regarding the loss of future earning capacity. *Stormo,* 469 N.W.2d at 821; *Martino,* 315 N.W.2d at 311.

In *Fox v. Dannenberg,* 906 F.2d 1253, 1256 (8th Cir.1990), the court, in discussing the admission of expert testimony under Rule 702 (SDCL 19–15–2), stated as follows:

> Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony. See J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[02] at 702–30 (1988). The Advisory Notes to the Rule comment that "[t]he rule is broadly phrased. The fields of knowledge which may be drawn upon are not limited merely to the 'scientific' and 'technical' but extend to all 'specialized' knowledge. Similarly, the expert is viewed, not in a narrow sense, but as a person qualified by 'knowledge, skill, experience, training or education.'" Fed. R.Evid. 702, Advisory Note. In *Larabee v. MM & L Intern. Corp.,* 896 F.2d 1112 (8th Cir.1990), we quoted with approval a leading scholar's statement that "'doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility.'" Id. at 1116 n. 6 (quoting Weinstein, ¶ 702[02] at 702–30)....

This leading scholar has also written in regards to jury consideration of an expert's testimony as follows:

> The authors have found that a more liberal view can work quite well in practice.... [I]n jury cases, when the matter is brought to the jurors' attention by a proper instruction, they show a full sensitivity to the problem—in fact often discounting the expert's opinion too much when it is based on hearsay or secondary evidence of documents or the like. We ought not assume the jurors

---

**3.** As stated in *Zepp,* the basis for this rule is "that it speeds up the trial and permits the opposing party to attack a weak foundation on cross-examination." *Zepp,* 444 N.W.2d at 31.

**4.** SDCL 19–15–3 provides:

   The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

SDCL 19–15–4 provides:

   An expert witness may be asked to state his opinions or inferences, whether these opinions or inferences are based on the witness' personal observation, or on evidence introduced at the trial and seen or heard by the witness, or on his technical knowledge of the subject, without first specifying hypothetically in the question the data on which these opinions or inferences are based. An expert witness may be required, on direct or cross-examination, to specify the data on which his opinions or inferences are based.

are less intelligent or alert than lawyers or judges. And we ought not inhibit experts from giving us as much aid as they can. 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 703–29 (1991).

In other words, the opinion of the expert cannot be elevated to a level higher than the evidence and logic upon which it is predicated after being attacked by cross-examination. Then, it is for the jury to measure the worth of the opinion.

In the present case, there was a permanent partial impairment rating admitted in evidence which admittedly differed from Ostrander's proposed opinion on loss of employability rating. In *Cozine v. Midwest Coast Transport, Inc.*, 454 N.W.2d 548 (S.D.1990), we concluded, however, that although a medical impairment rating given by a doctor is an important factor to measure loss of use, the extent of loss of use does not necessarily equal the extent of medical impairment. *Id.* at 552. We found in *Cozine* that, in order to fully determine a loss of use, the hearing examiner should have considered other evidence, such as the testimony of a vocational expert regarding loss of employability. *Id.*

Ostrander's testimony was to be presented to assist the jury in determining how Marnette's seven percent impairment rating affected his employability. This testimony could have assisted the jury in making a full determination of Marnette's loss of earning capacity. Accordingly, the trial court should have allowed Ostrander's testimony without restriction. In essence, the trial court determined that the expert had the knowledge, experience, training and education to give an opinion which would assist the jury, but superimposed a limit on this opinion, namely the physician expert's impairment rating.

Morgan's vigorous cross-examination required Ostrander to specify the data upon which his court-limited opinions and court-limited inferences were based.[5] The jury then had the opportunity to determine the weight to be given Ostrander's court-sanitized opinion.

I would hold that preventing the jury from making a determination of the credibility and weight to be given to the unsanitized opinion, constituted an abuse of discretion. If, in fact, the underpinnings of an expert's opinion are weak as could be the case here, this goes to the weight and credibility of the opinion and not its admissibility. *Polk v. Ford Motor Co.*, 529 F.2d 259 (8th Cir.1976) *cert. denied* 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832. The trial court should have permitted Ostrander's testimony concerning a future reduction in Marnette's employment capacity, a thirty percent reduction in earnings advancement, and future increases in unemployment of 2.4 weeks each year on his claim of lost earning capacity which was an element of damages contained in the court's instructions to the jury. Then, the question of the credibility and the weight to be given to this unsanitized opinion would have been determined by the jury in light of the vigorous cross-examination evidenced by the record on the part of the defense.

I would reverse and remand for a new trial.

---

**5.** We also note the case of *Indian Coffee Corp. v. Procter & Gamble Co.*, 752 F.2d 891 (3d Cir. 1985), which held that the trial court erroneously excluded testimony where it did not make an inquiry as to what data experts in the field routinely rely on. As a practical matter, the court in the present case, too, could have made an inquiry of Ostrander's bases for his opinion if it was not satisfied with the foundation.