# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

————

No. 98-1187

————

Ian J. Clark, a minor, by and through
his mother and father as parents and
next friends; Bridget McGinn Clark;
Caven Clark;

            Appellants;

            v.

Gregory W. Heidrick, M.D.; Lincoln
Ob/Gyn, P.C.;

            Appellees.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of Nebraska.

————

Submitted: June 10, 1998

Filed: July 30, 1998

————

Before LOKEN and HEANEY, Circuit Judges, and JONES,[1] District Judge.

————

HEANEY, Circuit Judge.

————

[1]The Honorable John B. Jones, United States District Judge for the District of
South Dakota, sitting by designation.

Alleging medical malpractice, Ian J. Clark, by and through his parents, brought this diversity action against Dr. Gregory Heidrick and Lincoln Ob/Gyn, P.C. The jury returned a verdict in favor of the defendants, and the magistrate denied the Clarks' motion for a new trial. On appeal, the Clarks challenge two evidentiary rulings and the denial of their motion for a new trial. We affirm.

## I.

Ian was born on January 28, 1994, at Saint Elizabeth Community Health Center in Lincoln, Nebraska. Heidrick performed Ian's delivery. At the time of delivery, Heidrick was a shareholder, agent, and employee of Lincoln Ob/Gyn. The Clarks brought a diversity action against Heidrick and Lincoln Ob/Gyn, alleging that the negligent delivery of Ian injured Ian and his mother. The Clarks alleged that Heidrick failed to manage Mrs. Clark's labor properly, failed to perform a Cesarean section, and failed properly to manage a complication that occurred during the labor known as a "shoulder dystocia."[2] Specifically, the Clarks contended that Heidrick improperly applied obstetrics forceps, exerting excessive traction on Ian's head and causing left brachial plexus palsy.[3] On November 7, 1997, the jury returned a verdict in favor of

---

[2]In the words of Dr. Lawrence Borow, an expert witness for the Clarks, a

shoulder dystocia is a situation in which the baby's head delivers either spontaneously, . . . or the doctor has intervened, meaning he had to put forceps on, . . . but was able to get the baby's head out. And then the baby's head pulls back, retracts against the opening of the vagina and the shoulders don't promptly follow. In other words, the shoulders are caught.

(Tr. at 169.)

[3]According to Dr. Borow, "left brachial plexus palsy," also known as Erb's palsy, "means that the baby has significant disability with movement in the arm on the left side." (Tr. at 197.)

2

Heidrick and Lincoln Ob/Gyn.  On November 20, 1997, the magistrate denied the Clarks' motion for a new trial.  On appeal, the Clarks argue that the magistrate erred by (1) allowing speculative expert testimony, (2) denying the introduction of rebuttal testimony, and (3) denying their motion for a new trial.

## II.

A.  Opinion Testimony of Dr. Heidrick

Heidrick testified at trial that he did not specifically remember the events of the labor and Ian's delivery.  Even after consulting his delivery notes, Heidrick was unable to state with specificity what happened during the delivery.  The delivery notes indicate that the baby's shoulder was "tight" and that there was a "nuchal arm"[4] that delivered "without difficulty."  Despite Heidrick's lack of knowledge, he testified that the nuchal arm "contributed to the tight shoulder."  Over the Clarks' objection, Heidrick also testified as to the possible causes of brachial plexus injuries.  While Heidrick testified that a nuchal arm was a possible cause of Ian's injury, he could not determine with a reasonable degree of medical probability what caused Ian's injuries.

The Clarks argue that the magistrate committed clear error by allowing Heidrick's testimony as to the possible causes of brachial plexus injuries in general and Ian's injuries in particular.  Heidrick and Lincoln Ob/Gyn argue that, rather than idle speculation, Heidrick's testimony regarding possible causes of brachial plexus injuries properly assisted the jury in a global understanding of brachial plexus injuries.  With respect to Heidrick's testimony regarding Ian's specific injuries, Heidrick and Lincoln Ob/Gyn argue that it was proper for Heidrick to testify that both a nuchal arm and

---

[4]A "nuchal arm" is an arm or hand that is improperly located behind the fetal head during delivery.  (See Tr. at 537.)

improper extraction <u>could</u> have been the cause of Ian's injuries and that <u>neither</u> could be established with a reasonable degree of medical certainty.  We agree.

The decision to admit or exclude expert testimony is reviewed for a clear abuse of discretion.  <u>See</u> <u>Hose v. Chicago N.W. Transp. Co.</u>, 70 F.3d 968, 972 (8th Cir. 1995).  "The question of whether expert testimony should be admitted or excluded is a matter governed by federal, rather than state, law."  <u>Fox v. Dannenberg</u>, 906 F.2d 1253, 1255 (8th Cir. 1990) (citations omitted).  Rule 702 of the Federal Rules of Evidence provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702.  Rule 702 favors admissibility if the testimony will assist the trier of fact, <u>see</u> <u>Justice v. Carter</u>, 972 F.2d 951, 957 (8th Cir. 1992), and doubts regarding "'whether an expert's testimony will be useful should generally be resolved in favor of admissibility.'"  <u>Larabee v. MM&L Int'l Corp.</u>, 896 F.2d 1112, 1116 n.6 (8th Cir. 1990) (quoting J. Weinstein & M. Berger, Weinstein's Evidence, para. 702[02] at 702-30 (1988)).

Heidrick's testimony gave the jury a global understanding of possible causes of brachial plexus injuries.  <u>Cf.</u>, <u>United States v. Johnson</u>, 28 F.3d 1487, 1497 (8th Cir. 1994) (expert testimony in a drug conspiracy trial admissible where "the jury's understanding of the conspiracy was aided by a global understanding of drug distribution networks").  It rebutted the implicit suggestion that the Clarks' explanation for the injuries was the only explanation and, therefore, challenged whether the Clarks had proved their theory of causation.  Finally, Heidrick's testimony reflected a scientifically valid method for determining the cause of Ian's injuries:  list the possible

causes and eliminate as many as possible. See Hose, 70 F.3d at 973 (ruling out alternative explanations for injuries is a valid medical method).

After carefully reviewing the record, we are unable to conclude that the district court abused its discretion. The cause of Ian's injuries was a crucial part of the case, and far from confusing the jury, Heidrick aided it by admitting that he could have caused Ian's injuries but could not say with a reasonable degree of medical probability what, from a range of possibilities, caused them.

B. Dr. Smith's Deposition Testimony

Dr. Carl Smith, an expert witness retained by Heidrick and Lincoln Ob/Gyn, testified in his June 4, 1997 deposition that flexion or traction on the brachial plexus was the most likely explanation for Ian's injuries. The Clarks tried their case on the theory that excessive traction and/or flexion was the cause of Ian's injuries and presented expert testimony to that effect. Smith was unable to testify at trial, but the Clarks did not offer Smith's deposition in their case-in-chief.

During the defendants' case-in-chief, Heidrick and Lincoln Ob/Gyn played Smith's October 24, 1997 videotaped deposition in which Smith testified that Ian's injury was caused either by an "abnormal in utero fetal position" or by "the mechanics of doing the delivery." In addition, Smith stated that Heidrick did not depart from the proper standard of care and that Heidrick "provided thoughtful attentive care to" Mrs. Clark.

In rebuttal, the Clarks proffered Smith's opinion testimony to reiterate that flexion was the most likely cause of the injury. The magistrate did not allow the evidence. The Clarks argue that the magistrate abused his discretion by excluding the evidence. Heidrick and Lincoln Ob/Gyn contend that the proffered evidence was cumulative, rather than actual rebuttal testimony, and was permissibly excluded.

"'Normally parties are expected to present all of their evidence in their case in chief. Allowance of a party to present additional evidence on rebuttal depends upon the circumstances of the case and rests within the discretion of . . . the trial judge.'" Gossett v. Weyerhaeuser Co., 856 F.2d 1154, 1156 (8th Cir. 1988) (quoting Smith v. Conley, 584 F.2d 844, 846 (8th Cir. 1978)).  As a result, we "may reverse a trial court's determination of the admissibility of rebuttal testimony only where there has been a clear abuse of discretion." Id. (citations omitted).

After a careful review of the record we conclude that the magistrate did not clearly abuse his discretion.  Even if we were to conclude that the evidence should have been admitted, the exclusion constituted harmless error.  See Strong v. Mercantile Trust Co., 816 F.2d 429, 432 (8th Cir. 1987).

C.  Motion for a New Trial

After the jury returned a verdict in favor of Heidrick and Lincoln Ob/Gyn, the Clarks moved for a new trial.  The magistrate denied their motion.  The Clarks contend that the jury's verdict was not supported by the evidence and that they are entitled to a new trial.

An order denying a motion for new trial is not appealable in the absence of exceptional circumstances. McGowne v. Challenge-Cook Bros., Inc., 672 F.2d 652, 659 (8th Cir. 1982).  In such cases, we will "reverse for a clear abuse of discretion only where there is an 'absolute absence of evidence' to support the jury's verdict." Pulla v. Amoco Oil Co., 72 F.3d 648, 657 (8th Cir. 1995) (quoting Gopher Oil Co. v. Union Oil Co., 955 F.2d 519, 526 (8th Cir. 1992)).

At trial, Heidrick and Lincoln Ob/Gyn offered the expert testimony of Dr. Carl Smith and Dr. James Elston who testified, in short, that the care Heidrick provided Mrs. Clark was appropriate and that Heidrick met the proper standard of care.  While

the Clarks offered contrary expert testimony, the jury evaluated the evidence before it and determined that Heidrick had not breached the proper standard of care. After a careful review of the record, we conclude that there was no absolute absence of evidence to support the jury's verdict.

## III.

For the reasons stated above, we affirm.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.